## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OWENS CORNING, *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 00-03837 (JKF)<br>(Jointly Administered) |
| THE OFFICIAL REPRESENTATIVES OF THE BONDHOLDERS AND TRADE CREDITORS OF DEBTORS OWENS CORNING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT SUISSE FIRST BOSTON, individually and in its capacity as Agent, AG CAPITAL FUNDING PARTNERS, L.P., ARAB BANK PLC, BANKERS TRUST COMPANY, THE BANK OF AMERICA, THE BANK OF NEW YORK, THE BANK OF TOKYO-MITSUBISHI, LTD., BANK ONE, N.A., BARCLAYS BANK, PLC, BEAR, STEARNS & CO., INC., THE CHASE MANHATTAN BANK N.A., JP MORGAN CHASE BANK, CIC-UNION EUROPEENNE, CITIBANK, N.A., CONTINENTAL CASUALTY, CREDIT AGRICOLE INDOSUEZ, CREDIT INDUSTRIEL ET COMMERCIAL, CREDIT LYONNAIS, THE DAI-ICHI KANGYO BANK LIMITED, DEXIA BANK, FLEET NATIONAL BANK, FORTIS (USA) FINANCE LLC, FRANKLIN MUTUAL ADVISORS, LLC, GE CAPITAL COMMERCIAL FINANCE, GOLDMAN SACHS CREDIT PARTNERS L.P., HBK INVESTMENTS, HBK MASTER FUND, INSTITUTO BANCARIO SAN PAOLO, J.P. MORGAN SECURITIES/CHASE SECURITIES, KBC BANK, N.V., KENSINGTON INTERNATIONAL LIMITED, KEYBANK NATIONAL ASSOCIATION, KING STREET CAPITAL MANAGEMENT | Adv. Pro. No. 06-50122 (JKF) |

L.L.C., LEHMAN COMMERCIAL PAPER
INC., LONGACRE MASTER FUND LTD.,
MAINSTAY FUNDS, MERRILL LYNCH,
PIERCE, FENNER & SMITH INC., THE
MITSUBISHI TRUST AND BANKING
CORPORATION, MORGAN GUARANTEE
TRUST COMPANY OF NEW YORK,
NATEXIS BANQUE, NATEXIS BANQUES
POPULAIRES, THE NORTHERN TRUST
COMPANY, OAKTREE CAPITAL
MANAGEMENT, LLC, PERRY PRINCIPALS,
OAK HILL SECURITIES FUND, L.P., OAK
HILL SECURITIES FUND II, L.P., ROYAL
BANK OF CANADA, SALOMON BROTHERS
HOLDING COMPANY, INC., SANPAOLO IMI
S.P.A., SILVER OAKS & CO. L.P., SOCIETE
GENERALE, SPRINGFIELD ASSOCIATES,
LLC, SUMITOMO TRUST & BANKING, STB
DELAWARE FUNDING TRUST I, SUNTRUST
BANK, WELLS FARGO BANK, N.A., BANK
OF NOVA SCOTIA, FIRST NATIONAL BANK
OF CHICAGO, NATIONSBANC
MONTGOMERY SECURITIES LLC,
BANCAMERICA ROBERTSON STEPHENS,
and JOHN DOES 1-50,

                Bank Defendants,

IPM, INC., OWENS-CORNING FIBERGLAS
SWEDEN, INC., and VYTEC CORPORATION,

           Affiliate Non-Debtor Defendants.

---

## MOTION OF CREDIT SUISSE, INDIVIDUALLY AND AS AGENT, AND CERTAIN NAMED INSTITUTIONAL DEFENDANTS TO DISMISS COMPLAINT OF OFFICIAL REPRESENTATIVES OF OWENS CORNING BONDHOLDER AND TRADE CREDITOR CONSTITUENCIES FOR EQUITABLE SUBORDINATION AND PIERCING OF THE CORPORATE VEIL

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY JUDGE:

Credit Suisse Cayman Islands Branch (f/k/a Credit Suisse First Boston, Cayman Islands Branch) ("Credit Suisse"), individually and as Agent for the holders of claims against the Debtors under the Credit Agreement (defined below), and the defendants identified on Schedule 1 annexed hereto as "Movants" (collectively with Credit Suisse, the "Movants"), as and for their motion to dismiss the instant complaint under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), dated January 6, 2006 (the "Complaint"), of the "official representatives" of Owens Corning bondholders and trade creditor constituencies ("John Hancock") commencing the above-referenced adversary proceeding, respectfully represent as follows:

## I.  SUMMARY OF MOTION

1.    Owens Corning Corporation ("Owens Corning" or "OCD") recently filed its Fifth Plan of Reorganization (the "Fifth Plan") that provides for distributions to creditors that are consistent with the opinion of the United States Court of Appeals for the Third Circuit (the "Third Circuit") overturning the decision to substantively consolidate the estates of OCD and certain of its subsidiaries (collectively, the "Debtors").  By filing the Complaint, John Hancock seeks to upset the distributions to creditors proposed in the Fifth Plan.  The Complaint, among other things, seeks to (i) subordinate the claims of the named institutional defendants (the "Named Institutional Defendants") to those of Owens Corning's bondholders and trade creditors (the "Trade Creditors") and (ii) pierce the corporate veil between Owens Corning and certain of its subsidiaries (the "Non-Debtor Guarantors").

2.     The Complaint should be dismissed as to the equitable subordination

claims for relief because it fails the most basic rules of notice pleading under Rule 8 of

the Federal Rules, such as correctly identifying the particular plaintiffs and defendants

and making allegations that sufficiently advise each defendant as to the conduct

complained of.  Moreover, the Complaint fails to meet the specificity pleading

requirements under Rule 9(b) of the Federal Rules as to its allegations of fraud and

misrepresentation.  As an example, the Complaint is devoid of any allegations that any of

the Named Institutional Defendants currently hold claims against Owens Corning – a

critical factor in an action for equitable subordination.  The Complaint also should be

dismissed as to the veil piercing claims because res judicata and collateral estoppel

principles bar the re-litigation of facts and issues already determined by the Third Circuit

in its decision denying the Debtors' motion for substantive consolidation of their estates.

For the reasons set forth herein and in the supporting memorandum of law filed

contemporaneously herewith (the "Memorandum of Law"), the Complaint should be

dismissed in its entirety.

## II.  BACKGROUND

A.     **Public Disclosure of the Credit Agreement**

3.     Pursuant to that certain Credit Agreement, dated as of June 26, 1997 (the

"Credit Agreement"), among Owens Corning, as Borrower and Guarantor, the other

Borrowers and Guarantors, the Banks listed on Annex A thereto (collectively, the

"Banks"), and Credit Suisse, as Agent, the Banks provided Owens Corning with a $2

billion revolving credit facility.  Each of Owens Corning's domestic subsidiaries having a

book value in excess of $30 million was required to guarantee Owens Corning's obligations under the Credit Agreement.[1] *See* Credit Agreement at A 78.[2]

4.      The existence of subsidiary guarantors is immediately ascertainable from the cover page and preamble to the Credit Agreement. *See id.* at A 29, A 36.  Moreover, an entire Article under the Credit Agreement is devoted to the guaranty obligations of Owens Corning's subsidiaries. *See id.* at A 93-95.  Seven subsidiaries originally executed the Credit Agreement and were specifically identified as Guarantors (the "Subsidiary Guarantors").[3]

5.      On July 24, 1997, Owens Corning filed the Credit Agreement with the SEC as an exhibit to its second quarter 1997 Form 10-Q.  On March 13, 1998, Owens Corning filed the "First Amendment" to the Credit Agreement as an exhibit to its 1997 Form 10-K.  The First Amendment included the signatures for each of the original Subsidiary Guarantors. *See* First Amendment at A 260.  On March 15, 1999, Owens Corning filed the "Second Amendment" to the Credit Agreement as an exhibit to its 1998 Form 10-K.  The Second Amendment identified six additional Subsidiary Guarantors.[4]

---

[1] As noted by the Third Circuit, the Banks would not have extended credit to Owens Corning without such guarantees. *In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005).

[2] Citations to pages of documents included in the Appendix filed simultaneously herewith will be referred to as "A __."

[3] Falcon Foam Corporation, IPM, Inc. ("IPM"), Owens Corning Fiberglass Sweden, Inc. ("OC Sweden"), Owens-Corning Fiberglas Technology, Inc. ("OCFT"), Soltech, Inc., OC Industries, Inc., and Western Fiberglass of Texas, Inc.

[4] Section 8.06 of the Credit Agreement requires, in certain circumstances, OCD to cause new subsidiaries to become Subsidiary Guarantors.  The additional Subsidiary Guarantors were Amerimark Building Products, Inc., Falco, Inc., Fabwel, Inc., Norandex Inc., Stone Products Corporation, and Vytec Corporation ("Vytec").

**B.**     **The Bond Offerings**

6.    From April 3, 1997 through June 15, 1999, OCD filed with the SEC multiple Form S-3 Registration Statements in connection with the issuance by OCD of the Bonds (defined below). The Complaint alleges that Owens Corning filed the following Form S-3 Registration Statements, which include the prospectuses, prospectus supplements, and prospectus amendments attached thereto (collectively, the "Prospectuses"):

- April 3, 1997 Prospectus (the "April 3, 1997 Prospectus");

- May 1, 1997 Amendment to April 3, 1997 Prospectus (the "May 1, 1997 Amendment");

- March 13, 1998 Prospectus (the "March 13, 1998 Prospectus");

- April 16, 1998 Amendment to March 13, 1998 Prospectus (the "April 16, 1998 Amendment");

- April 30, 1998 Prospectus Supplement (the "April 30, 1998 Supplement");

- July 22, 1998 Prospectus Supplement (the "July 22, 1998 Supplement");

- April 21, 1999 Prospectus (the "April 21, 1999 Prospectus"); and

- June 15, 1999 Amendment to April 21, 1999 Prospectus (the "June 15, 1999 Amendment").

7.    From May 29, 1992, through March 16, 1999, Owens Corning issued approximately $1.5 billion of public debt. The following table identifies the public debt outstanding and the amount and date issued.

| Bond Issue | Amount ($ in millions) | Date Issued |
|---|---|---|
| 8.875% Debentures due 2002 | $150 | May 29, 1992 |
| 9.375% Debentures due 2012 (collectively, the "<u>1992 Debentures</u>") | $150 | |
| *subtotal* | $300 | |
| 7.5% Term Notes due 2005 | $300 | April 30, 1998 |
| 7.7% Term Notes due 2008 | $250 | |
| 7.5% Debentures due 2018 | $400 | July 22, 1998 |
| 7% Notes due 2009 (collectively, the "<u>Bonds</u>")[5] | $250 | March 16, 1999 |
| *subtotal* | <u>$1,200</u> | |
| *Total 1992 Debs. & Bonds* | $1,500 | |

Neither the 1992 Debentures nor the Bonds are guaranteed by any of Owens Corning's subsidiaries.

8.    The March 13, 1998 Prospectus, April 16, 1998 Amendment, April 30, 1998 Supplement, July 22, 1998 Supplement, April 21, 1999 Prospectus, and June 15, 1999 Amendment were filed with the SEC <u>after</u> the filing of the July 1997 10-Q and the 1997 10-K (which included the Credit Agreement, First Amendment, and the Subsidiary Guarantors' signature pages).

9.    Each of the Prospectuses, including the Prospectuses filed prior to the execution of the Credit Agreement, provided that the various series of OCD indebtedness issued pursuant thereto would be unsecured and rank equally with the debt of the "Company." Each Prospectus contains one of the following three statements:

---

[5] The 1992 Debentures are specifically <u>excluded</u> from the definition of "Bonds" herein and in the Memorandum of Law for reasons discussed below. The 1992 Debentures are included in the definition of "bonds" used in the Complaint. *See* Complaint at ¶ 11(c) ("'Bond Debt' means the publicly issued and traded unsecured indebtedness of OCD."). References herein and in the Memorandum of Law to the "<u>Bondholders</u>" include only holders of Bonds as defined herein. The lowercase term "bondholders" will be used to refer to bondholders as defined in the Complaint.

- Unless otherwise specified in a Prospectus Supplement, the Debt Securities, when issued, will be unsecured and will rank equally with all other unsecured and unsubordinated indebtedness of the Company.[6]

- All Notes issued and to be issued under the Indenture will be unsecured obligations of the Company and will rank *pari passu* with all other unsecured and unsubordinated indebtedness of the Company from time to time outstanding.[7]

- The Debt Securities will be unsecured and unsubordinated obligations of Owens Corning and will rank equally with all of our other unsecured and unsubordinated indebtedness.[8]

Each Prospectus contains one of the following rules of interpretation:

- *Unless the context indicates otherwise*, references in this Prospectus to the "Company" include Owens Corning and its consolidated subsidiaries. (emphasis added)[9]

- *Unless the context indicates otherwise*, references in this Prospectus to "we" or "Owens Corning" include Owens Corning and its consolidated subsidiaries. (emphasis added)[10]

## C.    The Chapter 11 Cases

10.    On October 5, 2000, the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The cases are jointly administered as *In re Owens Corning, et al.*, Case No. 00-03837 (JKF) (the "Chapter 11

---

[6] *See* April 3, 1997 Prospectus at A 274; May 1, 1997 Amendment at A 410; March 13, 1998 Prospectus at A 541; April 16, 1998 Amendment at A 578; April 30, 1998 Supplement at A 666; July 22, 1998 Supplement at A 690.

[7] *See* May 1, 1997 Amendment at A 346.

[8] *See* April 21, 1999 Prospectus A at 717; June 15, 1999 Amendment at A 814.

[9] *See* April 3, 1997 Prospectus at A 278; May 1, 1997 Amendment at A 417; March 13, 1998 Prospectus at A 545; April 16, 1998 Amendment at A 582; April 30, 1998 Supplement at A 669; July 22, 1998 Supplement at A 693.

[10] *See* April 21, 1999 Prospectus at A 710; June 15, 1999 Amendment at A 807.

<u>Cases</u>"). The Debtors have continued to operate and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**D.     The Substantive Consolidation Motion**

11.     On January 17, 2003, the Debtors filed a motion for substantive consolidation (the "<u>Substantive Consolidation Motion</u>"). *See* Substantive Consolidation Motion (Bankr. D.I. No. 6758).[11] On March 17, 2003, John Hancock filed a memorandum of law in support of the Substantive Consolidation Motion. *See* Pre-Trial Brief of Designated Members (Bankr. D.I. No. 7338) (filed under seal). Commencing in September 2001, the Debtors, John Hancock, and Credit Suisse, as Agent, among others, engaged in extensive discovery and the negotiation of more than 2,000 stipulations in preparation for the hearing on the Substantive Consolidation Motion. *See* Post-Trial Brief of Credit Suisse at 8 (Bankr. D.I. No. 12367).

12.     In April and May 2003, District Judge Wolin presided over a 13-day trial on the Substantive Consolidation Motion. *See* Substantive Consolidation Hearing Transcripts (Bankr. D.I. Nos. 8592, 8594-97, 8599-601, 8604, 8606, 8608, 8612, 8614, 8617). John Hancock appeared each day of the 13-day trial and its counsel examined and cross-examined witnesses, introduced documents into evidence, and argued before the Court. *See id.* After the trial concluded, but before a decision was rendered, Judge Wolin was recused from the Chapter 11 Cases and District Judge Fullam was designated to

---

[11] References *infra* and in the Memorandum of Law to the Bankruptcy Court docket, No. 00-03837 (JKF), will be referred to as "Bankr. D.I. No. __." References *infra* to the Third Circuit docket with respect to the Substantive Consolidation Motion, No. 04-4080, will be referred to as "Sub. Con. D.I. __." References *infra* to the docket in the Fraudulent Transfer Adversary Proceeding (as defined herein), No. 02-5829 (JPF), will be referred to as "Fraud. Trans. D.I. No. __." References *infra* and in the Memorandum of Law to the docket in the Equitable Subordination Adversary Proceeding, No. 06-50122 (JKF), as defined herein, will be referred to as "Equit. Sub. D.I. No. __."

replace him. *See* Writ of Mandamus, dated May 17, 2004 (Bankr. D.I. No. 11683); Designation of District Court Judge for Service on District Court, dated May 27, 2004 (Bankr. D.I. No. 11751).

13.     Following several days of additional hearings (John Hancock actively participated each day), *see* Substantive Consolidation Hearing Transcripts (Bankr. D.I. Nos. 11888, 12802), and post-trial briefing, on October 5, 2004, Judge Fullam rendered a decision granting the Substantive Consolidation Motion (the "District Court Decision"). *See In re Owens Corning*, 316 B.R. 168, 171 (Bankr. D. Del. 2004), *rev'd*, 419 F.3d 195 (3d Cir. 2005).

14.     On October 13, 2004, Credit Suisse, as Agent, appealed the District Court Decision (the "Appeal"). On January 19, 2005, John Hancock filed with the Third Circuit its appellate brief (the "Hancock Circuit Brief"). In the Hancock Circuit Brief, it contended that the evidence on the record before the District Court established that "the manner in which the Owens Corning enterprise was operated satisfies the stringent standards for veil piercing under [Delaware] state law." *See* Hancock Circuit Brief at 4 (Sub. Con. D.I. Jan. 19, 2005). In support of such contention, John Hancock alleged, among other things, that OCD operated as a "single economic unit" that failed to observe corporate formalities and that, among other subsidiaries, IPM was "nothing more than a mere façade." *See id.* at 30-60. On February 7, 2005, the Third Circuit held a hearing on the Appeal. *See* February 7, 2005 Transcript (Sub. Con. D.I. Feb. 18, 2005). John Hancock appeared and argued at that hearing. *See id.*

15.     On August 15, 2005, the Third Circuit filed its decision (the "Substantive Consolidation Decision") reversing the District Court Decision and denying the Substantive Consolidation Motion. *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005). Flatly rejecting the contentions in the Hancock Circuit Brief, the Third Circuit held that

there was <u>no</u> evidence in the record that OCD had disregarded the corporate form of its

Debtor and non-Debtor subsidiaries (collectively, the "<u>Subsidiaries</u>"), including, among

others, IPM, and found <u>no</u> evidence in the record of hopeless commingling of OCD's and

its Subsidiaries' assets and liabilities. *See id.* at 200, 212-15. Specifically, the Third

Circuit concluded "[e]ach subsidiary was a separate legal entity that observed governance

formalities. Each had a specific reason to exist separately, each maintained its own

business records, and intercompany transactions were regularly documented." *Id.* at 200.

Accordingly, the Third Circuit denied the Substantive Consolidation Motion, holding that

"[w]ith no meaningful evidence supporting either test to apply substantive consolidation,

there is simply not the nearly 'perfect storm' needed to invoke it." *Id.* at 216.

16.     On August 29, 2005, John Hancock among others, petitioned the Third

Circuit for rehearing. *See* Petition for Rehearing (Sub. Con. D.I. Aug. 29, 2005). On

September 28, 2005, the Third Circuit denied the petitions for rehearing. *See* Third

Circuit Rehearing Denial (Sub. Con. D.I. Sept. 28, 2005). On or about December 16,

2005, John Hancock filed an Application to Extend Time to file a Petition for Writ of

Certiorari, which application was granted by the United States Supreme Court. *See*

Supreme Court Order, dated Dec. 20, 2005 (Sub. Con. D.I. Dec. 23, 2005). On January

26, 2006, John Hancock filed its Petition for Writ of Certiorari with the Supreme Court.

*See* Petition for Writ of Certiorari (Sub. Con. D.I. Feb. 3, 2006). As of the date hereof,

such petition is *sub judice*.

**E.     The Plans Of Reorganization**

17.     In light of the Substantive Consolidation Decision, the Debtors

reformulated their previous chapter 11 plan, which was premised on substantive

consolidation of Owens Corning and its Debtor and non-Debtor Subsidiaries. On

December 31, 2005, the Debtors filed the Fifth Plan, which recognizes the corporate

separateness of each Debtor and non-Debtor entity. *See* Disclosure Statement (Bankr. D.I. No. 16569). The Fifth Plan provides bondholders with a recovery of 49% of their claims -- approximately $130 million over the 39.5% recovery proposed under the previous plan (the underlying term sheet for which John Hancock signed). *See id.* at vi. This Court has scheduled a hearing for April 5, 2006 to determine the adequacy of the Disclosure Statement with respect to the Fifth Plan, *see* Notice of Hearing With Respect to Fifth Plan at ¶ 3 (Bankr. D.I. No. 16818), and has scheduled confirmation hearings to begin on July 10, 2006.

18.     Notwithstanding the increased recoveries for bondholders under the Fifth Plan, John Hancock now opposes the Fifth Plan. *See, e.g.*, Memorandum in Support of Withdrawing the Reference at 10 (Equit. Sub. D.I. No. 10).

## F.     The Equitable Subordination Adversary Proceeding

19.     On January 6, 2006, John Hancock filed (and, on January 19, 2006, served) the Complaint, commencing the above-captioned adversary proceeding (the "Equitable Subordination Adversary Proceeding") in this Court seeking, among other things, (i) equitable subordination of the Named Institutional Defendants' Credit Agreement claims against Owens Corning to the claims of the bondholders and Trade Creditors (Count I), (ii) equitable subordination of the Named Institutional Defendants' Guarantee claims against certain (unidentified) Debtor subsidiaries to the intercompany claims of Owens Corning against those subsidiaries (Count I), (iii) equitable subordination of certain non-Debtor subsidiaries' claims against Owens Corning to the claims of the bondholders and Trade Creditors (Count II), (iv) to pierce the corporate veils of the Non-Debtor Guarantors, thereby gaining access to such entities' assets for the satisfaction of the bondholder and Trade Creditor claims (to the detriment of the Named Institutional Defendants which hold Guarantee claims) (Count III), and (v) if the

foregoing veil piercing is granted, equitable subordination of the Named Institutional Defendants' claims against the consolidated entities to the claims of the bondholders and Trade Creditors (Count IV).

20.     On February 3, 2006, the Debtors and certain non-Debtor subsidiaries filed a motion in the District Court to refer that certain pending fraudulent transfer adversary proceeding (the "Fraudulent Transfer Adversary Proceeding") to the Bankruptcy Court (the "Fraudulent Transfer Referral Motion"). *See* Fraudulent Transfer Referral Motion (Fraud. Trans. D.I. No. 61). In response thereto, on February 13, 2006, John Hancock filed a motion (i) in opposition to the Fraudulent Transfer Referral Motion and (ii) seeking withdrawal of the reference with respect to the Equitable Subordination Adversary Proceeding (the "Equitable Subordination Withdrawal Motion" and, together with the Fraudulent Transfer Referral Motion, the "Referral/Withdrawal Cross Motions"). *See* Equitable Subordination Withdrawal Motion (Equit. Sub. D.I. Nos. 8, 10).

21.     On February 21, 2006, at a hearing in the Bankruptcy Court, the Debtors informed the Court of the filing of the Referral/Withdrawal Cross Motions. The Court noted the applicability of Rule 5011-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), which requires that, when a party moves in the District Court for a withdrawal of the reference in connection with a disputed issue, such party must concurrently file a motion in the Bankruptcy Court for a determination of whether such disputed issue is a "core" bankruptcy issue (a "Core Motion"). *See* Del. Bankr. L.R. 5011-1. On that same date, because John Hancock had not complied with Local Rule 5011-1, the Debtors filed a Core Motion, explaining that they did so to ensure that such motion would be timely considered by the Bankruptcy Court and that there would be no delay in the District

Court's consideration of the Referral/Withdrawal Cross Motions. *See* Core Motion (Equit. Sub. D.I. No. 15).

22. On February 23, 2006, the Debtors and Credit Suisse each filed a response (together, the "Responses") in support of the Fraudulent Transfer Referral Motion and in opposition to the Equitable Subordination Withdrawal Motion, *see* Responses (Fraud. Trans. D.I. Nos. 69, 70; Equit. Sub. D.I. Nos. 18, 24), and, on February 28, 2006, John Hancock filed a reply to the Responses. *See* Memorandum of Law in Reply to Debtors' and Banks' Opposition to Motion to Withdraw Reference (Fraud. Trans. D.I. No. 73; Equit. Sub. D.I. No. 25). On February 24, 2006, John Hancock filed a joinder to the Debtors' Core Motion, in which it conceded that the Equitable Subordination Adversary Proceeding is a "core" matter under 28 U.S.C. § 157(b). *See* Joinder in Core Motion (Equit. Sub. D.I. No. 22). No objections were interposed as to the Core Motion and, on March 13, 2006, the Debtors file a Certificate of No Objection with respect to such motion. *See* Certificate of No Objection (Equit. Sub. D.I. No. 31). The Referral/Withdrawal Cross Motions are *sub judice*.

## III.  THE COMPLAINT SHOULD BE DISMISSED

23. The Bank claims in the Chapter 11 Cases are structurally senior to the claims of the bondholders and the Trade Creditors of Owens Corning because the Bank claims are guaranteed by certain of Owens Corning's Debtor and non-Debtor Subsidiaries. Any confirmable plan of reorganization that recognizes that structural seniority, such as the Fifth Plan, must provide full payment for the Bank claims. By participating in the Substantive Consolidation Motion, John Hancock sought to eliminate the structural seniority so that the assets of the Subsidiaries would be available to pay the OCD bonds and trade claims.

24.     Having failed to substantively consolidate Owens Corning and the Subsidiaries, John Hancock now seeks to eliminate the structural seniority of the Bank claims by invoking a slightly different theory -- piercing the corporate veil – based on the same underlying facts. This time, however, John Hancock goes further and also seeks equitable subordination of the Bank claims to those of the bondholders and Trade Creditors.

25.     As explained below and in the Memorandum of Law, the equitable subordination Counts in the Complaint fail to meet the most basic pleading requirements of the Federal Rules, and the veil-piercing Count fails to allege a claim for which relief can be granted based on the doctrines of res judicata and collateral estoppel.

## A.     Equitable Subordination

26.     The Complaint alleges that the Named Institutional Defendants participated in a fraud and misrepresentation against OCD's bondholders and Trade Creditors.  However, equitable subordination, as a remedy, is available only with respect to current holders of claims against a debtor.  The Complaint falls short of the most basic notice pleading requirements under the Federal Rules because it fails to allege that any of the Named Institutional Defendants currently hold Bank claims against Owens Corning. In fact, only 10 of the 60 Named Institutional Defendants are current holders of Bank claims.

27.     The Federal Rules also mandate that causes of action based in fraud or misrepresentation must be pled with particularity.  In order to prepare a defense adequately, each defendant must be told what representation it allegedly made, why such representation was false or misleading, who exactly relied on such representation and when such reliance occurred, why such reliance was justified, and the nature of any alleged damages.  The Complaint falls short of this requirement because it makes only

conclusory allegations that the Named Institutional Defendants as a group participated in the alleged fraud surrounding the issuance of the bonds and that the current holders of the bonds as a group were defrauded. In fact, on the face of the documents referred to in the Complaint, it is apparent that none of the 10 Named Institutional Defendants that currently hold Bank claims was an underwriter for the bonds. Without allegations specifically describing with particularity the actions taken by each of those non-underwriter defendants, the Complaint must fail.

28.     The Complaint is also defective because it does not identify which current holders of the bonds relied on the alleged misstatements. In fact, based on the allegations in the Complaint and the documents referred to therein, it is clear that the $300 million of 1992 Debentures was issued five years before the alleged misrepresentations took place. The holders of the 1992 Debentures cannot make an allegation of reliance on any alleged misrepresentation occurring in 1998. Moreover, even John Hancock admits that the existence of the Subsidiary guarantees was fully disclosed no later than 2001. The Complaint fails to identify which (if any) of the current holders purchased Bonds before such disclosure. That identification is crucial because no claim for fraud properly can be alleged as to holders who purchased after such information had been fully disclosed.

29.     Finally, the equitable subordination Counts in the Complaint should be dismissed because the Prospectuses, by referring to publicly available filings with the SEC, fully disclosed the existence of the Subsidiary guarantees. Moreover, the statements in the Prospectuses relating to the relative priority of the Bonds are not misleading or false. Only a tortuous and self-contradictory interpretation of those statements would lead anyone to believe that the Bonds, which on their face were solely debt of Owens Corning, were to be *pari passu* with the debt of Owens Corning's Subsidiaries.

**B.**     **Piercing the Corporate Veil**

30.     To support the remedy of piercing the corporate veil, the Complaint makes the same allegations that were made to support the Substantive Consolidation Motion. However, the law is clear -- plaintiffs are barred from getting a "second bite at the apple" by later attempting to apply a new legal theory to the same facts and circumstances determined against them in an earlier proceeding. In this case, the Third Circuit has spoken on the issue of whether any of Owens Corning's Subsidiaries were "sham affiliates." The Third Circuit determined that "[e]ach subsidiary was a separate legal entity that observed governance formalities. Each had a specific reason to exist separately, each maintained its own business records, and intercompany transactions were regularly documented." *In re Owens Corning*, 419 F.3d at 200.

31.     John Hancock is barred now by the doctrines of res judicata and collateral estoppel from pursuing any cause of action based on those facts and circumstances, including piercing the corporate veil -- a theory nearly identical to substantive consolidation.

WHEREFORE for the reasons set forth herein and in the Memorandum of Law filed concurrently herewith, the Movants request entry of an order dismissing the Complaint with prejudice, together with such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
March 21, 2006

WEIL, GOTSHAL & MANGES LLP
Michael F. Walsh
Judy G.Z. Liu
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

LANDIS RATH & COBB LLP

Richard S. Cobb (I.D. No. 3157)
Rebecca L. Butcher (I.D. No. 3816)
919 Market Street, Suite 600
Wilmington, DE 19810
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein
Ellen R. Nadler
Jeffrey S. Trachtman
919 Third Avenue
New York, NY 10022
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

ATTORNEYS FOR MOVANTS

## Schedule 1

This schedule (i) identifies the named defendants that are Movants and (ii) identifies which of the Movants and the other named defendants do not hold Bank claims.

Note that some of the named defendants listed on this schedule have undergone name changes, due to merger, acquisition, or other business or legal reasons. However, for ease of reference, the schedule uses the names as identified in the Complaint.

**Movants:**

| | |
|---|---|
| Credit Suisse First Boston | Does not hold a Bank claim |
| AG Capital Funding Partners L.P. | |
| Bancamerica Robertson Stephens | Does not hold a Bank claim |
| Bank of Nova Scotia | Does not hold a Bank claim |
| Bank One, N.A. | Does not hold a Bank claim |
| Barclays Bank, PLC | Does not hold a Bank claim |
| Bear, Stearns & Co. Inc. | |
| Citibank, N.A. | |
| Credit Agricole Indosuez | Does not hold a Bank claim |
| Credit Industriel et Commercial | Does not hold a Bank claim |
| Credit Lyonnais | Does not hold a Bank claim |
| First National Bank Of Chicago | Does not hold a Bank claim |
| Fleet National Bank | Does not hold a Bank claim |
| Fortis (USA) Finance LLC | Does not hold a Bank claim |
| Franklin Mutual Advisors, LLC | |
| GE Capital Commercial Finance | Does not hold a Bank claim |
| Goldman Sachs Credit Partners L.P. | |
| HBK Investments | Does not hold a Bank claim |
| HBK Master Fund | Does not hold a Bank claim |
| Instituto Bancario San Paolo | Does not hold a Bank claim |
| JP Morgan Chase Bank | |
| J.P. Morgan Securities/Chase Securities | Does not hold a Bank claim |
| KBC Bank, N.V. | Does not hold a Bank claim |
| Keybank National Association | Does not hold a Bank claim |
| Lehman Commercial Paper Inc. | |
| Longacre Master Fund Ltd. | Does not hold a Bank claim |
| Merrill Lynch, Pierce, Fenner & Smith Inc. | Does not hold a Bank claim |
| Morgan Guarantee Trust Company of New York | Does not hold a Bank claim |
| Natexis Banque | Does not hold a Bank claim |
| Natexis Banques Populaires | Does not hold a Bank claim |
| Nationsbanc Montgomery Securities LLC | Does not hold a Bank claim |
| Oak Hill Securities Fund, L.P. | Does not hold a Bank claim |
| Oak Hill Securities Fund II, L.P. | Does not hold a Bank claim |
| Perry Principals | Does not hold a Bank claim |
| Royal Bank of Canada | Does not hold a Bank claim |
| Salomon Brothers Holding Company, Inc. | Does not hold a Bank claim |
| SanPaulo IMI S.p.A. | Does not hold a Bank claim |
| Silver Oaks & Co. L.P. | Does not hold a Bank claim |
| SunTrust Bank | Does not hold a Bank claim |
| The Bank of America | |
| The Bank Of Tokyo-Mitsubishi, Ltd. | Does not hold a Bank claim |
| The Chase Manhattan Bank N.A. | Does not hold a Bank claim |
| The Mitsubishi Trust and Banking Corporation | Does not hold a Bank claim |
| The Northern Trust Company | Does not hold a Bank claim |

**Other Named Institutional Defendants:**

| | |
|---|---|
| Arab Bank | Does not hold a bank claim |
| Bankers Trust Company | Does not hold a bank claim |
| Bank of New York | Does not hold a bank claim |
| CIC-Union Europeenne | Does not hold a bank claim |
| Continental Casualty | Does not hold a bank claim |
| The Dai-Ichi Kangyo Bank Limited | Does not hold a bank claim |
| Dexia Bank | Does not hold a bank claim |
| Kensington International Limited | |
| King Street Capital Management | Does not hold a bank claim |
| Mainstay Funds | Does not hold a bank claim |
| Oaktree Capital Management LLC | Does not hold a bank claim |
| Societe General | Does not hold a bank claim |
| Springfield Associates LLC | |
| Sumitomo Trust & Banking | Does not hold a bank claim |
| STB Delaware Funding Trust I | Does not hold a bank claim |
| Wells Fargo Bank, N.A. | Does not hold a bank claim |