# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - :

In re:     :    Chapter 11

OWENS CORNING, et al.,     :    Case No. 00-03837 (JKF)

       Debtors.     :    (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - :

THE OFFICIAL REPRESENTATIVES OF    :
THE BONDHOLDERS AND TRADE
CREDITORS OF DEBTORS OWENS
CORNING, et al.,     :

       Plaintiffs,     :     Adv. Proc. No. 06-50122 (JKF)

       v.     :

CREDIT SUISSE FIRST BOSTON, et al.,    :

       Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - :

## OPENING BRIEF OF DEFENDANTS IPM, INC., OWENS-CORNING FIBERGLAS SWEDEN, INC. AND VYTEC CORPORATION, JOINED BY OWENS CORNING, IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, STAY COMPLAINT OF OFFICIAL REPRESENTATIVES OF THE OWENS CORNING BONDHOLDERS AND TRADE CREDITOR CONSTITUENCIES FOR EQUITABLE SUBORDINATION AND TO PIERCE THE CORPORATE VEIL

**SIDLEY AUSTIN LLP**
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Attorneys for Owens Corning, et al.

**SAUL EWING LLP**
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
222 Delaware Avenue, P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Charles O. Monk, II
Henry R. Abrams
Robin D. Leone
Lockwood Place
500 E. Pratt Street
Baltimore, MD 21202
(410) 332-8600
Attorneys for Owens Corning, et al.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ...................................................................... 6

LEGAL STANDARD................................................................................. 6

ARGUMENT .............................................................................................. 8

I.      PLAINTIFFS LACK STANDING TO SEEK EQUITABLE
       SUBORDINATION TO CLAIMS OF OWENS CORNING ................ 8

II.     COUNT II SHOULD BE DISMISSED FOR FAILURE TO
       MEET THE PLEADING REQUIREMENTS OF FEDERAL
       RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b) AND
       BECAUSE THE CLAIMS ARE NOT RIPE AT THIS TIME ........... 10

       A.     Count II Fails to Meet the Pleading Requirements for
              Equitable Subordination Under Federal Rules 12(b)(6)
              and 9(b) ........................................................................ 10

             1.     The Complaint Fails to Sufficiently Allege
                   Fraudulent Misconduct ................................... 10

             2.     The Complaint Fails to Allege Misconduct
                   Sufficient to Support Claim for Equitable
                   Subordination .................................................. 18

             3.     The Complaint Fails to Allege Sufficient Facts to
                   Contend that the Bondholders and Trade
                   Creditors Suffered an Injury or that the
                   Defendant Subsidiaries Incurred a Benefit ....... 20

       B.     The Equitable Subordination Claims Against Defendant
               Subsidiaries are Not Ripe at this Time ....................... 21

III.     COUNTS III AND IV ARE BARRED BY THE DOCTRINES
       OF RES JUDICATA AND COLLATERAL ESTOPPEL ................. 22

       A.     The Substantive Consolidation Claims are Barred by
               the Doctrine of Res Judicata ....................................... 24

             1.     Prior Suit was Final Judgment on the Merits .............. 25

             2.     Prior Suit Involved the Same Claim ............................ 26

           3.     The Same Parties and Their Privies Participated
in Prior Suit ....................................................................27

   (B)   Substantive Consolidation and Veil Piercing Claims are
Barred by the Doctrine of Collateral Estoppel.........................28

          1.     The Complaint Seeks to Litigate the Same Issues
Decided in the Substantive Consolidation Ruling.........30

          2.     The Substantive Consolidation Issue was
Actually Litigated.............................................32

          3.     The Substantive Consolidation Issue was
Determined by a Final Judgment. ...................................33

          4.     The Determination was Essential to Prior
Judgment.........................................................................33

IV.    TO THE EXTENT THAT ANY CLAIMS SURVIVE THE
DEFENDANTS' MOTIONS TO DISMISS, ADJUDICATION
OF THE SURVIVING CLAIMS SHOULD BE
CONSOLIDATED WITH THE CONFIRMATION HEARING........34

CONCLUSION..................................................................................................38

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Advanta Corp. Sec. Litigation*, 180 F.3d 525 (3d Cir. 1999) .................................. 11

*Allen v. McCurry*, 449 U.S. 90 (1980) ............................................................................. 31

*Armstrong World Industrial, Inc. v. Adams*, 961 F.2d 405 (3d Cir. 1992) ....................... 22

*In re At Home Corp.*, 2005 U.S. App. LEXIS 25407 (9th Cir. 2005)................................. 9

*In re Bankruptcy Appeal of Allegheny Health, Education, and Research Foundation ("AHERF")*, 252 B.R. 332 (W.D. Pa. 1999)............................................. 36

*Bell Atlantic-Pennsylvania, Inc. v. The Pennsylvania Utility Commission*, 273 F.3d 337 (3d Cir. 2001)...................................................................................... 26

*In re Best Products Co., Inc.*, 168 B.R. 35 (S.D.N.Y. 1994) ...................................... 37, 38

*Brown v. N. Central F.S., Inc.*, 173 F.R.D. 658 (N.D. Iowa 1997)................................... 13

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997) ............................................................................................................... 7

*In re Burlington Motor Carriers, Inc.*, 199 U.S. Dist. LEXIS 20819 (D. Del. Dec. 30, 1999) ................................................................................................ 27

*Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371 (1940) ................................................................................................................... 27

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................. 7

*In re Continental Airlines, Inc.*, 145 B.R. 404 (D.Del. 2002).................................... 26, 27

*Corestates Bank v. N.A. v. Hulls America, Inc.*, 176 F.3d 187 (3d Cir. 1999) ................................................................................................................ 27, 29

*In re Cutty's Gurnee, Inc.*, 133 B.R. 934 (Bankr. N.D. Ill. 1991)................................... 18

*Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563 (D.N.J. 2002) ................................. 18

*Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542 (3d Cir. 1996) ............................. 31

*Donegal Steel Foundry Co. v. Accurate Products Co.*, 516 F.2d 583 (3d Cir. 1975) ................................................................................................................ 26, 27

*Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337 (S.D.N.Y. 2005) ....................... 14

*E.E.O.C. v. United States Steel Corp.*, 921 F.2d 489 (3d Cir. 1990) ................................ 26

*In re Eagle Enterprises, Inc.*, 265 B.R. 671 (E.D. Pa. 2001) ............................................ 36

*Ebrahimi v. E.F. Hutton & Co.*, 852 F.2d 516 (10th Cir. 1988) ....................................... 17

*Eizenga v. Stewart Enterprises, Inc. et. al*, 124 F. Supp. 2d 967 (E.D. La.
    2000) ............................................................................................................................. 14

*In re Emerick Farms, Inc.*, 201 B.R. 790 (Bankr. N.D. Ill. 1996) .............................. 33, 34

*In re Exide Technologies, Inc.*, 299 B.R. 732 (Bank. D. Del. 2003) ......................... 19, 20

*In re Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1995) .................................................... 20

*In re Foxmeyer Corp.*, 290 B.R. 229 (Bankr. D. Del. 2003) ............................................ 32

*Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957 (W.D. Wis. 2003) ............................... 14

*In re Fruehauf Trailer Corp.*, 250 B.R. 168 (D. Del. 2000) ............................................ 17

*In re G-I Holdings, Inc.*, 318 B.R. 66 (D.N.J. 2004) ...................................................... 22

*General Electric Co. v. Hol-Gar Manufacturing Corp.*, 431 F. Supp. 881
    (E.D. Pa. 1977) ............................................................................................................ 11

*In re Genesis Health Ventures*, 324 B.R. 510 (D. Del. 2005) ................................. 7, 29, 30

*In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001) ...................... 34

*Government Guarantee Fund of the Republic of Finaland v. Hyatt Corp.*,
    955 F. Supp. 441 (D.V.I. 1997) ..................................................................................... 8

*Greiff v. T.I.C. Enterprises, L.L.C.*, 2004 U.S. Dist. LEXIS 680 (D. Del.
    Jan. 9, 2004) ............................................................................................................ 12, 13

*Harper v. Valley Broadcasters, Inc.*, 743 F. Supp. 1076 (D. Del. 1990) ........ 30, 31, 32, 33

*Hawksbill Sea Turtle v. Federal Emergency Management Agency*, 126
    F.3d 461 (3d Cir. 1997) ................................................................................................ 31

*Heiser v. Woodruff*, 327 U.S. 726, 90 L. Ed. 970, 66 S. Ct. 853 (1945) ......................... 31

*In re Hoffinger Industrial, Inc.*, 307 B.R. 112 (Bankr. E.D. Ark. 2004) ......................... 37

*Hudson v. King & Spaulding*, 467 U.S. 69 (1984) ............................................................. 7

*Insurance Consultants of America, Inc. v. Southeastern Insurance Group, Inc.*, 746 F. Supp. 390 (D.N.J. 1990) ................................................ 17

*In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990) ............................................. 23

*In re: Lamont Gear Co.*, 1997 Bankr. LEXIS 172 (Bankr. E.D. Penn. Feb. 24, 1997) ................................................................................................ 21

*In re Lernout & Hauspie Speech Products*, 264 B.R. 336 (Bank. D. Del. 2001) ................................................................................................ 22, 23

*In re Mayo*, 112 B.R. 607 (Bankr. D. Ver. 1990) ............................................... 9

*In re McMillan*, 579 F.2d 289 (3d Cir. 1978) ................................................... 26

*Miree v. DeKalb County, Ga.*, 433 U.S. 25 (1977) ............................................. 7

*Montana v. United States*, 440 U.S. 147 (1979) ............................................... 26

*In re N. Parent, Inc.*, 221 B.R. 609 (Bankr. D. Mass. 1998) .......................... 22, 23

*In re New Center Hospital*, 187 B.R. 560 (E.D. Mich. 1995) ............................ 34

*In re New Valley Corp.*, 168 B.R. 73 (Bankr. D.N.J. 1994) ............................... 37

*In re Norman Docteroff*, 133 F.3d 210 (3d Cir. 1997) ................................ 30, 31

*In re Northgate Terrace Apts., Ltd.*, 126 B.R. 520 (Bankr. S.D. Ohio 1991) ............... 37

*In re Nutri/System, Inc.*, 169 B.R. 854 (Bankr. E.D. Penn. 1994) .................... 19

*In re Nutri/System, Inc.*, 178 B.R. 645 (E.D. Penn. 1995) ......................... 19, 20

*OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 2005 Bankr. LEXIS 1148 (Bankr. D. Del. Jun. 7, 2005) ............................ 11

*Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003), cert. dismissed, 540 U.S. 1001 (2003) & 540 U.S. 1002 (2003) ................................................................. 9

*Old Colony Ventures I, Inc.*, 1996 U.S. Dist. LEXIS 18305 (D. Kans. Oct. 2, 1996) ................................................................................................ 32

*In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005) (as amended by *In re Owens Corning*, 2005 U.S. App. LEXIS 18043, *4 (3d Cir. Aug. 15, 2005)), petition for cert. filed, (Jan. 26 2006) (No. 05-941) ................ passim

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) .................................... 22

*Philadelphia Federation of Teachers v. Ridge*, 150 F.3d 319 (3d Cir. 1998) .................................................................................................. 22

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ............................. 7

*Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454 (3d Cir. 1994)................................................................. 22

*In re Rath Packing Co.*, 38 B.R. 552 (Bankr. N.D. Iowa 1984) ...................... 23

*Renne v. Geary*, 501 U.S. 312 (1991) ................................................................ 22

*In re Rockefeller Center Properties, Inc.*, 311 F.3d 198 (3d Cir. 2002)............................ 7

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) ..................... 11

*Saporito v. Combustion Engineering Inc.*, 843 F.2d 666 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989)................................ 11

*See EBS Litigation LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302 (3d Cir. 2002)....................................................................................... 18

*Seville Industrial Machinery*, 742 F.2d at 791 ............................................... 11

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ....................... 22

*Stoll v. Gottlieb*, 305 U.S. at 170-72 ............................................................... 27

*Student Finance Corp. v. Royal Indemnity Co. (In re Student Finance Corp.*, 2004 U.S. Dist. LEXIS 4952 ................................................. 12

*In re Submicron Systems Corp.*, 432 F.3d 448 (3d Cir. 2006)............................. 11, 20, 21

*In re Temtechco, Inc.*, 1998 Bankr. LEXIS 1612 (Bankr. D. Del. Dec. 18, 1998) ..................................................................................................... 7, 8

*In re Venture Holdings Co., LLC*, 2005 Bankr. LEXIS 76 (E.D. Mich. Jan. 26, 2005) ............................................................................................. 37

*In re Williams Communications Group, Inc.*, 281 B.R. 216 (Bankr. S.D.N.Y. 2002)........................................................................................ 37

*In re Winstar Communications, Inc.*, 2005 Bankr. LEXIS 2683 (Bankr. D. Del. Dec. 21, 2005) ................................................................................ 19

*In re Woodscape Ltd. Partnership*, 134 B.R. 165 (Bankr. D. Md. 1991) ........................ 37

## STATE CASES

*In re Energy Cooperative, Inc.*, Nos. 81 B 0581, 81 A 2804, 81 A. 2804, 1986 Bankr. LEXIS 4865 (Bankr. N.D. Ill. Dec. 20, 1986) ...................................... 23

*Erath v. Xidex Corp.*, No. CIV-89-198, 1991 WL 338322 (D. Ariz. Feb. 7, 1991) ........................................................................................................... 14

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 1990 WL 123840 (S.D.N.Y. 1990) ................................................. 37

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983 (Del. Ch. 1987) ...................................................................................................................... 32

*Maldonado v. Flynn*, 417 A.2d 378 (Del. Ch. 1980) ...................................... 28

*Merrill v. Crothall-Am, Inc.*, 606 A.2d 96 (Del. 1992)................................. 13

*Patrick Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. S.Ct. 2004) ................................................................................................... 9

*Playtex Family Products, Inc. v. St. Paul Surplus Lines Insurance Co.*, 564 A.2d 681 (Del. Super. Ct. 1989) ................................................................ 28

*In re Walnut Equip. Leasing Co., Inc.*, 1999 WL 1068448 (Bankr. E.D. Pa. 1999) ............................................................................................................. 38

## FEDERAL STATUTES

11 U.S.C. § 105(a).............................................................................................. 36

11 U.S.C. § 1129 .................................................................................................. 6

11 U.S.C. § 510(c) .......................................................................................... 4, 22

11 U.S.C. § 510(c) ............................................................................................... 9

Fed. R. Bankr. P. 7009 ...................................................................................... 11

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 7

Fed. R. Civ. P. 9(b) ............................................................................................ 11

U.S. Const. Art. III, § 2 ..................................................................................... 22

IPM, Inc., Owens-Corning Fiberglas Sweden, Inc. and Vytec Corporation (collectively, the "Defendant Subsidiaries"), joined by Owens Corning ("Owens Corning"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby submit this Opening Brief in Support of their Motion (the "Motion") to Dismiss or, Alternatively, Stay the Complaint of Official Representatives of the Owens Corning Bondholders and Trade Creditor Constituencies (the "Bondholders and Trade Creditors" or the "Plaintiffs")[1] for Equitable Subordination and to Pierce the Corporate Veil (the "Complaint").

## PRELIMINARY STATEMENT

The Bondholders and Trade Creditors filed the Complaint at a critical time in the Debtors'[2] chapter 11 bankruptcy proceedings. After more than five years of legal

---

[1] While the Complaint is purportedly brought by the Official Representatives of the Owens Corning Bondholders and Trade Creditor Constituencies, Owens Corning submits that it is not in the global interests of all of the Owens Corning Bondholders and Trade Creditors. Most, if not all, of the Bondholders and Trade Creditors are not proper parties to this litigation because they suffered no harm by the acts of the Defendants, as alleged in this Complaint. No Trade Creditor is among the "Official Representatives" and the only creditor who is a constituent of this group is John Hancock Life Insurance Company ("John Hancock"), which is a holder of certain Owens Corning public debt. Wilmington Trust Company ("Wilmington Trust") is the indenture trustee for such debt. While John Hancock and Wilmington Trust name themselves "'Official Representatives' ... in their capacity as members of the Official Committee of Unsecured Creditors who represent the interests of the holders of the Debtors' Bond Debt and Trade Debt in these Bankruptcy Cases" (Complaint, ¶11(r)), they seek relief on behalf of all of the Bondholders and Trade Creditors. However, the only named Plaintiffs in the "Parties" section of the Complaint are John Hancock and Wilmington Trust. (Complaint, ¶¶ 17-18).

[2] The Debtors are: Owens Corning, CDC Corporation, Engineered Yarns America, Inc., Falcon Foam Corporation, Integrex, Fibreboard Corporation, Exterior Systems, Inc., Integrex Ventures LLC, Integrex Professional Services LLC, Integrex Supply Claim Solutions LLC, Integrex Testing Systems LLC, Homexperts LLC, Jefferson Holdings, Inc., Owens-Corning Fiberglas Technology Inc., Owens Corning, HT, Inc., Owens-Corning Overseas Holdings, Inc., Owens Corning Remodeling Systems, LLC and Soltech, Inc.

wrangling and litigation, the Debtors are approaching the end of the reorganization process. On December 31, 2005, the Debtors and their co-plan proponents, the Asbestos Claimants Committee (the "ACC") and the Legal Representative for Futures Claimants (the "Futures Representative"), filed the Fifth Amended Joint Plan of Reorganization for Owens Corning and its Affiliated Debtors and Debtors-in-Possession (the "Fifth Amended Plan") and a proposed Disclosure Statement.[3] The Fifth Amended Plan—which was a product of extensive negotiation—was also filed with the support of the steering committee of the debt holders under Owens Corning's primary pre-petition bank credit facility (the "Bank Steering Committee"). The Debtors are advised that the Bank Agent and the Majority Lenders (*i.e.*, those holding more than 50.1% of the outstanding obligations under the Pre-Petition Credit Facility) now support the Fifth Amended Plan as well.

Accordingly, as of today, representatives of holders of approximately 85% of the more than $10 billion of pre-petition unsecured claims against Owens Corning support the Fifth Amended Plan, and are invested in a fair and orderly plan confirmation process. Following the District Court's estimation of contingent asbestos liabilities and the Third Circuit's definitive ruling on substantive consolidation last year, the filing by the Debtors—with the consent of key creditor constituencies—of a confirmable plan marks real and substantial progress toward an orderly emergence from chapter 11. This Court will hold a hearing on April 5, 2006, to determine the adequacy of the proposed Disclosure Statement and a hearing beginning on July 10, 2006, on the confirmation of the Plan itself (the "Confirmation Hearing").

---

[3] To the extent any defined terms are used but not defined herein, such terms shall have the meaning ascribed to them in the Motion filed contemporaneously herewith.

The Bondholders and Trade Creditors oppose the Fifth Amended Plan, and for that reason alone the Bondholders and Trade Creditors filed the Complaint just six days after the Debtors filed the Fifth Amended Plan, on January 6, 2006. To put it bluntly, the Complaint is designed to delay or derail the confirmation process by challenging the *bona fides* of the Defendant Banks' claims and intercompany claims, notwithstanding the substantive consolidation ruling (the "Substantive Consolidation Ruling") of the United States Court of Appeals for the Third Circuit. See In re Owens Corning, 419 F.3d 195 (3d Cir. 2005). As explained below, this Complaint is about tactics and negotiating leverage concerning the Fifth Amended Plan, not about the merits.

The Complaint consists of four counts: two counts (Counts II and III) against IPM, Inc. ("IPM"), Owens-Corning Fiberglas Sweden, Inc. ("OCFS"), and Vytec Corporation ("Vytec") and two counts (Counts I and IV) against the Defendant Banks.[4]

---

[4]     The "Defendant Banks" are Credit Suisse First Boston, individually and in its capacity as Agent, AG Capital Funding Partners, L.P., Arab Bank Plc, Bankers Trust Company, The Bank of America, The Bank of New York, The Bank of Tokyo-Mitsubishi, Ltd., Bank One, N.A., Barclays Bank, Plc., Bear, Stearns & Co., Inc., The Chase Manhattan Bank N.A., JP Morgan Chase Bank, CIC-Union Europeene, Citibank, N.A., Continental Casualty, Credit Agricole Indosuez, Credit Industriel Et Commercial, Credit Lyonnais, The Dai-ichi Kangyo Bank Limited, Dexia Bank, Fleet National Bank, Fortis (USA) Finance LLC, Franklin Mutual Advisers, LLC, GE Capital Commercial Finance, Goldman Sachs Credit Partners L.P., HBK Investments, HBK Master Fund, Instituto Bancario San Paolo, J.P. Morgan Securities/Chase Securities, KBC Bank, N.V., Kensington International Limited, Keybank National Association, King Street Capital Management L.L.C., Lehman Commercial Paper Inc., Longcare Master Fund, Ltd., Mainstay Funds, Merrill Lynch, Pierce, Fenner & Smith Inc., The Mitsubishi Trust and Banking Corporation, Morgan Guarantee Trust Company of New York, Natexis Banque, Natexis Banques Populaires, The Northern Trust Company, Oaktree Capital Management, LLC, Perry Principals, Oak Hill Securities Fund, L.P., Oak Hill Securities Fund II, L.P., Royal Bank of Canada, Salomon Brothers Holding Company, Inc., Sanpaolo IMI S.P.A., Silver Oaks & Co. L.P., Societe Generale, Springfield Associates, LLC, Sumitomo Trust & Banking, STB Delaware Funding Trust I, Suntrust Bank, Wells Fargo Bank, N.A., Bank of Nova Scotia, First National Bank of Chicago, Nationabanc Montgomery Securities LLC, Bancamerica Robertson Stephens, and John Does 1-50.

Count I seeks equitable subordination of the Defendant Banks' claims pursuant to Bankruptcy Code section 510(c). Count I not only seeks subordination of the Defendant Banks' claims to the claims of the Bondholder and Trade Creditors against Owens Corning, but it also seeks to subordinate the Defendant Banks' claims to the claims of Owens Corning against the "Guarantors." To the extent Count I seeks to subordinate the Defendant Banks' claims against the Guarantors to the claims of Owens Corning in its status as creditor, this claim should be dismissed, as the Bondholders and Trade Creditors lack standing to assert this claim on behalf of Owens Corning. Further, the Bondholders and Trade Creditors lack standing to subordinate claims against the Guarantors, as they concede that they are not creditors of the Guarantors.

Count II seeks equitable subordination of the Defendant Subsidiaries' claims against Owens Corning to the claims of the Bondholders and Trade Creditors, based on the conclusory allegation that the Defendant Subsidiaries made false statements of material fact and omitted material facts regarding the existence of certain guarantees of loans issued by the Defendant Banks to Owens Corning in prospectuses Owens Corning filed with the Securities Exchange Commission (the "SEC"). Count II fails to meet the pleading requirements of Federal Rules 12(b)(6) and 9(b) and should be dismissed. Count II also should be dismissed because the Bondholders and Trade Creditors fail to identify which Plaintiffs purportedly relied on these alleged misrepresentations and omissions.

Count III seeks to reverse pierce the corporate veils of the Defendant Subsidiaries based on a theory that the Defendant Subsidiaries are "alter egos" of Owens Corning, in order to make the assets of the Defendant Subsidiaries available to the creditors of Owens Corning. In sum and substance, Count III is a collateral attack on (or

re-litigation of) the Substantive Consolidation Ruling. The Bondholders and Trade Creditors want to take a second bite at the apple to achieve, in part, the same effect as substantive consolidation, by using the same "alter ego" type argument used in the substantive consolidation proceeding. (Complaint, Count III at ¶¶ 229-235). Count III should be dismissed because it is barred by the doctrines of res judicata and collateral estoppel, as the Third Circuit's finding that the Defendant Subsidiaries have maintained separate corporate identities bars claims for reverse veil piercing, as well as any claim based on an "alter ego" theory.

Count IV is derivative of Count III and seeks equitable subordination of the Defendant Banks' claims against the "merged Owens Corning enterprise" to the claims of the Bondholders and Trade Creditors. Like Count III, Count IV is part of a disguised claim for substantive consolidation, which has already been rejected by the Third Circuit. Count IV is, therefore, barred by res judicata and collateral estoppel.

Finally, to the extent any of these claims survive this Motion to Dismiss, Owens Corning submits that they should be resolved as *de facto* plan confirmation objections at the Confirmation Hearing. Owens Corning filed the Fifth Amended Plan to provide for distributions to creditors that are consistent with the District Court's estimation of contingent asbestos liabilities and the Third Circuit's Substantive Consolidation Ruling. By filing the Complaint, the Bondholders and Trade Creditors clearly seek to upset the distributions to creditors proposed in the Fifth Amended Plan.

First, the Complaint attacks the allowance of the Defendant Banks' claims (the Bondholders and Trade Creditors have already filed objections to those claims) and, pursuant to 11 U.S.C. § 1129 of the Bankruptcy Code, this Court will rule on those objections as part of the Confirmation Hearing. Second, the Complaint attacks

the claims of the Defendant Subsidiaries against their ultimate parent Owens Corning. The Fifth Amended Plan requires as a condition of confirmation that the intercompany claims and any objections thereto, including the claims that the Complaint seeks to subordinate, be resolved in the Confirmation Hearing. The Bondholders and Trade Creditors will have a full and fair opportunity to contest confirmation, put on their evidence before this Court, and meet their burden of proving why, in the wake of the Substantive Consolidation Ruling, the Defendant Banks are not entitled to the treatment afforded to them in the Fifth Amended Plan.

For all of these reasons, as explained in more detail below, the Bondholders and Trade Creditors' claims should be dismissed. To the extent that any of the claims survive this Motion to Dismiss, this Adversary Proceeding should be stayed until, and consolidated with, the Confirmation Hearing.

## FACTUAL BACKGROUND

The pertinent facts are set forth in the Motion and are incorporated here by reference as if fully set forth at length.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule 12(b)(6), the court accepts as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and views them in the light most favorable to the non-moving party. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002). However, the real question is, "whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief." Hudson v. King & Spaulding, 467 U.S. 69, 73 (1984). Thus, while a court will accept well-pled allegations as true for the purposes of the motion, courts examining 12(b)(6) motions will reject "legal conclusions,

unsupported conclusions, unwarranted inferences, unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997); see also Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); see also In re Rockefeller Center Properties, Inc., 311 F.3d 198 at 216 (3d Cir. 2002) ("Courts are not required to credit bald assertions or legal conclusions improperly alleged to the complaint and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."). Accordingly, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See FED. R. CIV. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Further, courts may grant a motion to dismiss on the basis of res judicata and collateral estoppel. In re Temtechco, Inc., 1998 Bankr. LEXIS 1612, *64 (Bankr. D. Del. Dec. 18, 1998) (JKF); In re Genesis Health Ventures, 324 B.R. 510, 529 (D. Del. 2005) (granting a motion to dismiss in its entirety on the basis of collateral estoppel). In deciding whether to dismiss a complaint based on the doctrines of res judicata and collateral estoppel, this Court has considered the issues raised in the prior hearing and any subsequent appeal. In re Temtechco, Inc., 1998 Bankr. LEXIS 1612 at *64; see also Government Guarantee Fund of the Republic of Finaland v. Hyatt Corp., 955 F. Supp. 441, 449 (D.V.I. 1997) (matters of public record that may be considered on a motion to dismiss, include prior rulings, court judgments, and arguments, prior pleading, transcripts of prior court proceedings).

**ARGUMENT**

The Complaint is a collateral attack on the Substantive Consolidation Ruling and the Fifth Amended Plan. Taken together, the four Counts effectively request that the Owens Corning estate be substantively consolidated with the non-debtor Defendant Subsidiaries in order to (1) eliminate the Guarantees and (2) give the Plaintiffs access to recovery from the Defendant Subsidiaries' assets ahead of the Defendant Banks. Because the Bondholders and Trade Creditors seek to re-litigate claims and issues that the Third Circuit has already decided, the claims should be dismissed based on the doctrines of res judicata and collateral estoppel. Taken individually, the claims are each deficient and should be dismissed, in whole or part, for the reasons stated below.

## I.  PLAINTIFFS LACK STANDING TO SEEK EQUITABLE SUBORDINATION TO CLAIMS OF OWENS CORNING

In Count I, the Plaintiffs request, among other things, "[t]hat this Court enter an order equitably subordinating the Bank Defendants' Guarantee claims ... to the claims of Owens Corning against the Guarantors." (Complaint, Count I) (emphasis added). To the extent that Count I seeks subordination to Owens Corning's claims against the Guarantors, the equitable subordination claim belongs to the estate, not the Plaintiffs. In order to determine whether a claim is direct or derivative, a court must first determine whether the claim is property of the debtor's bankruptcy estate under Bankruptcy Code section 541. In re At Home Corp., 2005 U.S. App. LEXIS 25407, *4 (9th Cir. 2005). Whether a claim is property of the debtor's estate is a question of state law. Id. Under Delaware law, whether a claim belongs to the company or a third party depends on who suffered the alleged harm – the corporation or the claimant. Id.; Patrick Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. S.Ct. 2004). In order for the claimant's claim to be a direct claim, the claimed direct injury must be

independent of any alleged injury to the corporation. In re At Home Corp., 2005 U.S. App. LEXIS 25407, *4; Tooley, 845 A.2d at 1036. In this case, the Complaint's plain language seeks recovery on behalf of Owens Corning (as a creditor of the Guarantors), not the Plaintiffs, and therefore the claim is property of the estate under section 541 and the Plaintiffs have no direct standing to assert the claim.

An exception to the general rule that only a trustee or debtor-in-possession may initiate an equitable subordination action exists where the debtor-in-possession has declined to assert such an action and the court grants consent to the creditor to bring the action. In re Mayo, 112 B.R. 607 at 651 (Bankr. D. Ver. 1990). Plaintiffs cannot fall into this exception for the simple reason that they are not creditors of the Guarantors - they are creditors of Owens Corning. As such, even under the loosest interpretation of standing to bring these equitable subordination claims, Plaintiffs lack standing.[5]

---

[5] In an attempt to override Owens Corning's business judgment not to prosecute these claims, the Bondholders and Trade Creditors must request derivative standing pursuant to Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003), cert. dismissed, 540 U.S. 1001 (2003) & 540 U.S. 1002 (2003) ("Cybergenics II"), to prosecute claims in the Debtors' name. The Bondholders and Trade Creditors are no strangers to Cybergenics II and the need to seek standing to prosecute derivative claims. On January 20, 2006, the Bondholders and Trade Creditors filed a motion (the "Derivative Standing Motion") with the District Court seeking to prosecute three groups of claims: (1) claims to recover alleged fraudulent transfers to subsidiaries of Owens Corning and related equitable relief; (2) a request to impose a constructive trust, for the benefit of Owens Corning's estate, on the assets transferred by Owens Corning to its subsidiaries as a remedy to address the alleged fraudulent transfers; and (3) claims challenging the validity of the guaranties given by Owens Corning's subsidiaries, for the benefit of the Owens Corning organization, under the parties' 1997 Credit Agreement (collectively, the "Derivitive Claims"). As set forth in Owens Corning's opposition to the Derivitive Standing Motion (the "Debtors' Opposition") (Bankr. D.I. No. 79), Owens Corning has good reasons for declining to pursue each of the Derivative Claims. Debtors' Opposition at 5.

II.   **COUNT II SHOULD BE DISMISSED FOR FAILURE TO MEET THE PLEADING REQUIREMENTS OF FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b) AND BECAUSE THE CLAIMS ARE NOT RIPE AT THIS TIME**

A.   **Count II Fails to Meet the Pleading Requirements for Equitable Subordination Under Federal Rules 12(b)(6) and 9(b)**

The Complaint fails to plead the facts necessary for an equitable subordination claim. In order to state a claim for equitable subordination against the Defendant Subsidiaries, the Plaintiffs must allege three elements:

1)   The Defendant Subsidiaries must have engaged in some type of inequitable conduct;

2)   The misconduct must have resulted in injury to the Bondholders and Trade Creditors or conferred an unfair advantage upon the Defendant Subsidiaries; and

3)   Equitable subordination of the Defendant Subsidiaries' claims must not be inconsistent with the provisions of the Bankruptcy Code.

In re Submicron Systems Corp., 432 F.3d 448, 462 (3d Cir. 2006). Even when viewing the alleged facts in a light most favorable to the Plaintiffs, the Complaint fails to sufficiently allege the first two prongs of the equitable subordination test.

1.   **The Complaint Fails to Sufficiently Allege Fraudulent Misconduct**

Federal Rule 9(b) is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7009. FED. R. BANKR. P. 7009; OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 2005 Bankr. LEXIS 1148 **4, n. 2 (Bankr. D. Del. Jun. 7, 2005). Federal Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); Rolo v. City Investing Co.

<u>Liquidating Trust</u>, 155 F.3d 644 (3d Cir. 1998). In order to satisfy Federal Rule 9(b), plaintiffs must plead with particularity the circumstances of fraud. <u>Id.</u> The heightened pleading requirement is properly invoked where fraud is pleaded to support a claim for equitable subordination. <u>See</u> <u>General Electric Co. v. Hol-Gar Mfg. Corp.</u>, 431 F. Supp. 881 (E.D. Pa. 1977) (reasoning in equitable subordination context that underlying fraud claim did not meet the Rule 9(b) requirements).[6]

While Count II regurgitates the five legal conclusions necessary for a showing of fraud under Delaware law, the Complaint as a whole does not meet the heightened standard of Federal Rule 9(b) requiring material facts necessary to support such legal conclusions to be pled with particularity. "Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result." <u>Student Fin. Corp. v. Royal Indem. Co.</u> (<u>In re Student Fin. Corp.</u>, 2004 U.S. Dist. LEXIS 4952, *11 (citing

---

[6] Courts have recognized two ways in which the Federal Rule 9(b) requirement can be satisfied. First, a plaintiff can plead "the who, what, when, where, and how: the first paragraph of any newspaper story." <u>In re Advanta Corp. Sec. Litig.</u>, 180 F.3d 525, 534 (3d Cir. 1999). Second, the requirement can be satisfied through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Seville Indus. Machinery</u>, 742 F.2d at 791. Further, where misrepresentation is alleged, plaintiffs must specifically identify the parties that both made and received the misrepresentation as well as the general content of the misrepresentation. <u>Saporito v. Combustion Engineering Inc.</u>, 843 F.2d 666, 675 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989). In fact, the Third Circuit specifically held that even where the allegations state the general content of a representation but fail to indicate who the speakers were or who received the information, the allegation is still inadequate to satisfy Federal Rule 9(b) standard. <u>Id.</u>

Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983)); Greiff v. T.I.C. Enters., L.L.C., 2004 U.S. Dist. LEXIS 680 (D. Del. Jan. 9, 2004).

The Complaint is especially deficient in its failure to allege how the Defendant Subsidiaries misled the Plaintiffs in connection with the sale of the bonds. Furthermore, the Complaint is deficient in its failure to allege which of the Plaintiffs allegedly relied upon the Defendant Subsidiaries' alleged misrepresentations in the Prospectuses, which Prospectuses each Plaintiff individually relied upon and when such reliance occurred, that such reliance was reasonable, and how each Plaintiff specifically suffered damage as a result of such reliance.[7] With respect to justifiable reliance based on a statement of intention, Delaware courts require factual allegations demonstrating that "the intention is material and the recipient has reason to believe that it will be carried out." Id. (citing Restatement (Second) of Torts § 544 (1977)).

      (a)     **The Complaint Fails to Identify which Plaintiffs Relied Upon the Alleged Misrepresentations and Omissions**

The Complaint fails to allege how each individual Plaintiff detrimentally relied upon specific acts of the Defendant Subsidiaries. Indeed, nowhere in the Complaint are the identities of the individual Trade Creditors and Bondholders even

---

[7] Categorical subordination of the claims held by defendants who did not engage in the alleged wrongful conduct to the claims held by putative beneficiaries who did not and could not have relied on the alleged misrepresentation is not appropriate. Rather, the appropriate action would be narrowly tailored to address the proper plaintiffs and defendants. Here, such an action is not hypothetical—it already exists. In 2001, a class of original bondholders who purchased certain of the public debt that Owens Corning issued in 1998 (excluding holders that purchased post-petition) sued Owens Corning's officers and directors and the Underwriters for violations of sections 11 and 12 of the Securities Act of 1933 (the "Massachusetts Action") based on the same set of factual allegations put forth in this action. The Plaintiffs' recasting of the Massachusetts Action into the instant adversary proceeding captures "plaintiffs" who suffered no harm and "defendants" who were not involved in the Bond offerings, and results in an overly broad application of equitable subordination.

revealed. The Complaint also fails to allege when the Bondholders and Trade Creditors incurred their claims against the Defendant Subsidiaries, a fact critical to whether the individual Bondholders and Trade Creditors have standing to assert the equitable subordination claims. Such pleading deficiencies are fatal. In cases involving multiple plaintiffs bringing a claim for fraud, "each plaintiff must allege that he or she was the victim of specific materially false statements in relation to the transaction in which he or she was involved." Brown v. N. Cent. F.S., Inc., 173 F.R.D. 658, 665-66 (N.D. Iowa 1997). Count II asserts group allegations that the entire body of "Trade Creditors" relied on the Prospectuses in extending trade credit and the "Bondholders" relied on the Prospectuses in purchasing Bonds, without any mention of specific Bondholders or Trade Creditors. (Complaint, ¶¶ 221, 224). If the Bondholders purchased their Bonds or the Trade Creditors extended trade credit after the dates upon which the Plaintiffs admit that Owens Corning's SEC filings fully disclosed the identities of the Guarantors, then those Bondholders and Trade Creditors lack standing to assert a claim for equitable subordination. See Merrill v. Crothall-Am, Inc., 606 A.2d 96, 100 (Del. 1992) (a plaintiff cannot recover for alleged fraud if the plaintiff was aware of the "true facts which are [allegedly] misrepresented.").

> **(b)** **Plaintiffs' Claims Do Not Fit in Narrow Window of Time for the Alleged Fraud**

A plaintiff's claim for fraud or misrepresentation cannot succeed where public filings "disclosed facts sufficient for Plaintiff to have ascertained the allegedly concealed information." Dujardin v. Liberty Media Corp., 359 F. Supp.2d 337, 348 (S.D.N.Y. 2005) (dismissing fraud claim where information was disclosed in public filings). Each of the Prospectuses upon which the Plaintiffs claim to have relied,

incorporates by reference the 1997 10-K or the 1998 10-K.[8]  Where documents containing

material facts are incorporated by reference, plaintiffs cannot maintain a claim for

material omission.  See Erath v. Xidex Corp., No. CIV-89-198, 1991 WL 338322, at *11

(D. Ariz. Feb. 7, 1991); Friedman v. Rayovac Corp., 295 F. Supp. 2d 957 (W.D. Wis.

2003); Eizenga v. Stewart Enterprises, Inc. et. al, 124 F. Supp. 2d 967 (E.D. La. 2000).

The Complaint admits that the Credit Agreement (which included the disputed

Guarantees) was entered on June 26, 1997.  (Complaint, ¶ 26).  The Complaint also

admits that "[o]n March 13, 1998, as part of its ... annual report for the fiscal year ended

December 31, 1997, [Owens Corning] filed an Amendment No. 1 to the 1997 Credit

Agreement ("Amendment No. 1") on EDGAR which identified seven of the Guarantors."

(Complaint, ¶ 43) (emphasis added).  Based on these two admissions alone, only the

Plaintiffs who can show that they took some action to their own detriment in the less than

9 month window of time between June 26, 1997 and March 13, 1998, in reliance on the

Prospectuses, can possibly plead a claim for fraud.  The reason the Complaint cannot

allege with particularity which Plaintiffs purchased Bonds between June 26, 1997 and

March 13, 1998 is simple—because no Bonds were issued during that period.[9]  As for the

Trade Creditors, even assuming their allegation that they actually relied on the

Prospectuses before issuing trade credit is true (Complaint, ¶ 224), they fail to allege

---

[8]     See, e.g., April 16, 1998 Amendment at 3 ("The following document filed by the
        Company with the Commission pursuant to the Exchange Act is incorporated here by
        reference: (1) the Company's Annual Report on Form 10-K (File No. 1-3660) for the
        fiscal year ended December 31, 1997, filed on March 13, 1998 (the '1997 Form 10-
        K').");  April 21, 1999 Prospectus at 2 ("We incorporate by reference the documents listed
        below... Annual Report on Form 10-K for the year ended December 31, 1998.").

[9]     Indeed, the Complaint alleges that on or about April 30, 1998, the Plaintiff Bondholders
        purchased the bonds "in connection with the initial offering of the [bonds] to the public."
        (Complaint, ¶ 165).

which individual creditors issued credit to the Debtors between June 26, 1997 and March 13, 1998 and that such debt remains outstanding. Since the Debtors filed bankruptcy more than 2 ½ years after the March 1998 disclosure, it is unlikely that any of the Trade Creditors hold outstanding debt that fits into the narrow window sufficient to support a claim for fraud.

### (c) The Complaint Fails to Allege Sufficient Facts to Show Reasonable Reliance by the Plaintiffs

Even if the Court were to take a huge leap of faith and logic that the Plaintiffs did actually rely on the Prospectuses to their detriment during the relevant window of time (without the required allegation of such facts), the Complaint fails to allege facts sufficient to show that such reliance was reasonable. This is because the Prospectuses themselves adequately disclose the existence of the Credit Agreement, by incorporating by reference Owens Cornings' publicly disclosed annual report which included the Credit Agreement.[10] The Plaintiffs admit, however, that they could have obtained a vast amount of material information about the Guarantees on the face of the Credit Agreement, including (a) the Credit Agreement "provided for the purported guarantee of the Credit Facility by Owens Corning's ... 'Significant Subsidiaries'" and (b) "who were defined therein Section 15.01(a) as '[Subsidiaries] having assets with an aggregate book value in excess of $30 million.'" (Complaint, ¶ 38).

The Plaintiffs allege that they relied to their detriment on a single sentence in the Prospectuses that states "All Notes issued and to be issued under the Indenture will be unsecured obligations of the Company and *will rank pari passu with all other secured*

---

[10]   See, e.g., April 16, 1998 Amendment at 3 (incorporating by reference the 1997 Form 10-K, filed on March 13, 1998). The 1997 Form 10-K incorporates the Credit Agreement as filed in the July 1997 10-Q, as "Annex A" thereto.

*and unsubordinated indebtedness of the Company from time to time outstanding.*"

(Complaint, ¶¶ 156-162). The plain language of this sentence is true—the Plaintiffs'

claims do rank *pari passu* with Owens Corning's unsecured creditors, including the

Defendant Banks. The Plaintiffs assert a more dubious reading of the sentence. Plaintiffs

would have this Court believe that, based on this single sentence, they thought they would

have direct access to the subsidiaries' assets and their claims would rank *pari passu* with

each of the unsecured creditors of Owens Corning's subsidiaries. Reliance on this

stretched interpretation of the plain language of the Prospectuses is simply unreasonable.

The only hook for this argument in the Complaint is the definition of the "Company" in

the Prospectuses:

> Unless the context indicates otherwise, references in this
> Prospectus to the 'Company' include Owens Corning and
> its consolidated subsidiaries.

April 3, 1997 Prospectus at p. 6. (Complaint, ¶¶ 155-162). For the purpose of the

ranking of unsecured claims of the subsidiaries, "the context indicates otherwise."

Specifically, each of the Prospectuses also clearly state that "the Indenture will not restrict

the incurring of unsecured Debt by the Company or its Subsidiaries."[11] Under this

provision, any lender or other creditor could have obtained guarantees from the

subsidiaries without triggering a default under the Indenture.

Even if the Prospectuses contain inconsistent contradictory information

(which they do not) regarding the level of priority of the Plaintiffs' claims, the Plaintiffs

had a duty to inquire about such perceived inconsistencies. Where two provisions in a

---

[11]  See April 3, 1997 Prospectus at 43; May 1, 1997 Amendment at 42; March 13, 1998
Prospectus at 8; April 16, 1998 Amendment at 8; April 30, 1998 Prospectus Supplement
at 8; July 22, 1998 Prospectus Supplement at 8; April 21, 1999 Prospectus at 12; and June
15, 1999 Amendment at 13.

document can be read to contradict one another, the parties are on inquiry notice and have a duty to exercise diligence or attempt to uncover the basis for the contradictions. Insurance Consultants of America, Inc. v. Southeastern Insurance Group, Inc., 746 F. Supp. 390, 406 (D.N.J. 1990); see also Ebrahimi v. E.F. Hutton & Co., 852 F.2d 516, 523 (10th Cir. 1988) (statements alerting investor that something may have been amiss are sufficient to put investor on inquiry notice and trigger duty to exercise reasonable diligence). Where the public filings reveal inconsistent information, an investor is imputed with a duty of inquiry and must exercise diligence to uncover the basis of the perceived inconsistencies. In re Fruehauf Trailer Corp., 250 B.R. 168, 189 (D. Del. 2000) (stating that "disclosure of wrongful acts in publicly filed documents such as annual reports is deemed to put a plaintiff on inquiry notice of the wrongful acts"); Insurance Consultants of America v. Southeastern Insurance Group, Inc., 746 F. Supp. at 406 (stating that where contradictions could not logically coexist, "investors were required at least to attempt to resolve these contradictions"). Further, an investor provided with inquiry notice is charged with the facts that could have been discovered. Del Sontro v. Cendant Corp., 223 F. Supp.2d 563, 571 (D.N.J. 2002) (as to whether limitation period had tolled, stating that "[o]nce plaintiffs are on inquiry notice, they ... are held to have constructive notice of the facts that could have been discovered ...").[12]

---

[12]    Notably, "[i]nquiry notice requires only notice of facts sufficient to put a person of *ordinary intelligence and prudence* on inquiry which, if pursued would lead to the discovery" of the "inconsistencies," as opposed to learned investors armed with legal counsel and skilled advisors. See EBS Litigation LLC v. Barclays Global Investors, N.A., 304 F.3d 302, 305 (3d Cir. 2002) (emphasis added); see also, In re Cutty's Gurnee, Inc., 133 B.R. 934, 943 (Bankr. N.D. Ill. 1991) (finding that where insurance company had "actual knowledge of facts which placed it under a duty of further inquiry regarding [an] interest prior to taking a competing interest, [the insurance company] was properly charged with knowledge of facts that such an inquiry would have produced," which in

## 2. The Complaint Fails to Allege Misconduct Sufficient to Support Claim for Equitable Subordination

Even without the heightened pleading requirement of fraud, the facts asserted in support of Count II do not allege the level of misconduct necessary to meet the first element of equitable subordination.[13] For the reasons stated above, the Plaintiffs cannot legitimately contend that the Defendant Subsidiaries committed any misrepresentation or omission rising to the level of inequitable conduct, as the Prospectuses and other SEC filings contained all of the information material to the Guarantees. For this reason alone, Count II must be dismissed.

Even accepting as true, for purposes of this Motion, the revisionist history of the Bondholders and Trade Creditors, the Complaint does not (and cannot) accuse the Defendant Subsidiaries of any affirmative "bad acts." Though the Complaint alleges that the Defendant Subsidiaries "knowingly and intentionally made false statements of material fact" and "omitted material facts" in the Prospectuses (Complaint, ¶¶ 221, 225), the Prospectuses related to bonds issued by Owens Corning and were filed with the SEC by Owens Corning, not the Defendant Subsidiaries.[14] Anticipating this fatal factual flaw,

---

this case was that the Bank intended that its mortgage would be second <u>only</u> to an earlier first mortgage.)

[13] Count II alleges that, as guarantors, the Defendant Subsidiaries knew that the Bondholders debt would be "structurally subordinated" to the claims of the Defendant Banks (Complaint, ¶ 217); that the Defendant Subsidiaries made false statements in the Prospectuses connected with the Bondholders offerings (Complaint, ¶ 218); that the Prospectuses contain no statements that indicate that the Bondholders debt will not rank equally and ratably with other unsecured obligations of the "Company" (Complaint, ¶ 218); and that the Defendant Subsidiaries knowingly and intentionally made material false statements and omissions in order to induce the Bondholders to purchase Bondholders and the Trade Creditors to extend trade credit (Complaint, ¶¶ 221, 225).

[14] <u>See</u> April 3, 1997 Prospectus; May 1, 1997 Amendment; March 13, 1998 Prospectus; April 16, 1998 Amendment; April 30, 1998 Supplement; July 22, 1998 Supplement; April 21, 1999 Prospectus; and June 15, 1999 Amendment.

the Complaint alleges "[Owens Corning] so dominated and controlled its Subsidiary Guarantors that the Subsidiary Guarantors should be deemed to have shared in any and all of the misrepresentations." (Complaint, ¶ 175). In effect, the Bondholders and Trade Creditors concede that, in fact, that the Defendant Subsidiaries committed no "bad acts," rather they should be "deemed" to have Owens Corning's statements imputed to them. Nor are there any allegations regarding the conduct of the Defendant Subsidiaries sufficient to meet the requirement of Fed. R. Civ. P. 9(b) in connection with the sale of the bonds.

"Courts have generally recognized three categories of misconduct which may constitute inequitable conduct for insiders: (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) use of the debtor as a mere instrumentality or alter ego." In re Exide Technologies, Inc., 299 B.R. 732, 744 (Bank. D. Del. 2003) (citation omitted). When a creditor is an insider, the plaintiff must present material evidence of unfair conduct. In re Winstar Communications, Inc., 2005 Bankr. LEXIS 2683, *126-27 (Bankr. D. Del. Dec. 21, 2005). It is well established that "insider status alone is not sufficient grounds to warrant subordination." In re Nutri/System, Inc., 169 B.R. 854, 866 (Bankr. E.D. Penn. 1994); 178 B.R. 645, 657 (E.D. Penn. 1995); In re Fabricators, Inc., 926 F.2d 1458, 1467 (5th Cir. 1995). The insider creditor must have actually used its power to control the debtor to the creditor's detriment. In re Exide Technologies, Inc., 299 B.R. 732, 744 (Bankr. D. Del. 2003). Where insiders unintentionally cause a debtor to commit acts that harm creditors, the conduct does not rise to the level of inequitable conduct necessary to warrant equitable subordination. In re Nutri/System, Inc., 178 B.R. at 658. Since the Complaint seeks to equitably subordinate the Defendant Subsidiaries' claims on the sole basis that they are insiders, without any

other accusation of intentional conduct or attempt to control Owens Corning, the Complaint fails to sufficiently allege the level of inequitable conduct necessary to state a claim for equitable subordination.

### 3. The Complaint Fails to Allege Sufficient Facts to Contend that the Bondholders and Trade Creditors Suffered an Injury or that the Defendant Subsidiaries Incurred a Benefit

The Bondholders and Trade Creditors have failed to alleged facts sufficient to show that they suffered an injury as a result of the Guarantees. In cases where creditors attempt to subordinate claims arising out of transactions where new money is loaned to a struggling company, courts are very reluctant to find injury to the creditors and, in fact, usually find that the underlying transaction only served to benefit those creditors. Submicron, 432 F.3d at 462-63 (denying equitable subordination where the District Court found that unsecured creditors were not harmed by lenders' dealings with debtor, because without the sale which infused new money into the debtor, it would have been forced to close down and liquidate, leaving nothing for the unsecured creditors). Unfortunately, due to the Plaintiffs' own lack of diligence and business conditions beyond the control of any of the parties of this adversary action, the transaction turned out to be a bad investment. As one court put it, the Plaintiffs' "protests at this juncture appear to be expressions of regret" of not negotiating a stronger position, rather than a legitimate claim for misrepresentation. In re: Lamont Gear Co., 1997 Bankr. LEXIS 172, *6 (Bankr. E.D. Penn. Feb. 24, 1997).

Further, the Complaint fails to sufficiently quantify any alleged injury to the Plaintiffs. In order to determine the extent to which the Plaintiffs were injured, if at all, by the Defendant Subsidiaries' issuance of the Guarantees, the Plaintiffs would have to show how the decreased assets available to the Owens Corning creditors as a result of

the Defendant Banks making direct claims against the Defendant Subsidiaries has caused more harm than the benefit that Owens Corning's creditors gained by the issuance of the Credit Agreement in the first instance. The Third Circuit has been reluctant to find harm sufficient to warrant equitable subordination where a transaction infuses new money into a company, when, without the new money, the company would have been worse off, leaving unsecured creditors in a less favorable position. Submicron, 432 F.3d at 462-63.

**B.    The Equitable Subordination Claims Against Defendant Subsidiaries are Not Ripe at this Time**

While the Debtors will attach to their Disclosures Statement Appendix E-2, "Prepetition Intercompany Claims," which lists claims of the Defendant Subsidiaries against Owens Corning, to the extent the Plaintiffs have any basis for objection to those claims, including equitable subordination, they can object to the allowance of the claims on that basis at the Confirmation Hearing. Unless and until the Intercompany Claims survive any objections and are allowed by this Court, an adversary proceeding for equitable subordination is premature.

Where an equitable subordination claim is pursued in the absence of an allowed claim, a bankruptcy court must dismiss the claim pursuant to Federal Rule 12(b)(6). In re Rath Packing Co., 38 B.R. 552 (Bankr. N.D. Iowa 1984); N. Parent, Inc., 221 B.R. 609. In Rath Packing, the underlying claims the debtor sought to equitably subordinate– the union's claims asserted against the debtor – were pending before the National Labor Relations Board. Rath Packing Co., 38 B.R. 552, 554. In anticipation of an adverse judgment, the debtor sought to equitably subordinate the "potential resultant" claim of the defendant. Id. at 557. The court concluded that since no subordination issue would arise until after the assessment of damages, any "judicial resolution of a §510(c)(1) question [was] nebulous, contingent, premature and abstract." Id.

The Fifth Amended Plan states that "[t]he Court shall have allowed all material Intercompany Claims … or otherwise adjudicated any objections to the allowance of such Claims" as a condition of confirmation.  See Fifth Amended Plan, § 12.1 (g).  Because the Defendant Subsidiaries do not currently hold any allowed claims against Owens Corning, this adversary proceeding is not ripe and it would be a waste of this Court's resources to prematurely adjudicate this effective objection to the Fifth Amended Plan in a one-off adversary proceeding without the participation of the other parties to the bankruptcy proceeding, only to readdress the issue at the Confirmation Hearing.  If this Court were to determine that these claims state a cause of action, it should be stayed and resolved at confirmation.

### III.  COUNTS III AND IV ARE BARRED BY THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL

Despite the labels of "piercing the corporate veil" and "equitable subordination," Counts III and IV are actually seeking substantive consolidation of the Defendant Subsidiaries' assets with Owens Corning.  The plain language of the Complaint clearly indicates that the relief sought by the Bondholders and Trade Creditors is the same relief rejected by the Substantive Consolidation Ruling.[15]  Count III of the Complaint seeks control over all assets of the Defendant Subsidiaries:

---

[15]  No doubt the Bondholders will rely on a single footnote from the Substantive Consolidation Ruling to support their contention that they can relitigate the substantive consolidation issue: "[t]he same sentiment applies to the argument of the bondholders that, subsequent to the 1997 loan to OCD, the Banks defrauded them in connection with a prospectus distributed with respect to a sale of OCD bonds underwritten by some of the Banks.  If the bondholders have a valid claim, they need to prove it in the District Court and not use their allegations as means to gerrymander consolidation of estates."  In re Owens Corning, 419 F.3d at 215, n. 27.  Nowhere in that footnote does the Third Circuit invite the Bondholders to bring any claims against the Debtor Subsidiaries.  However, the Third Circuit specifically instructs the Bondholders not to use their alleged claims against the Defendant Banks "as a means to gerrymander consolidation of estates."

(1) "**all property in the possession, custody or control** of the Sham Affiliates rightfully belongs to [Owens Corning] to be shared by the creditors of [Owens Corning], including but not limited to: (i) Owens Corning's stock ownership of its foreign subsidiaries held by IPM; and (ii) all assets of OC Sweden and Vytec (collectively, the "Property")" (Complaint, ¶ 232) (emphasis added);

(2) "[p]iercing the corporate veils of the Sham Affiliates and **making the assets** which they nominally hold **available to the creditors of [Owens Corning]** this is necessary ..." (Complaint, ¶ 235) (emphasis added); and

(3) "Official Representatives respectfully request ... [t]hat this Court enter an order piercing the corporate veils of [Owens Corning's] alter ego corporations IPM, OC Sweden and Vytec, together with an order **making each alter ego's assets available to the creditors of [Owens Corning]**, including but not limited to the Property" (Complaint, p. 59) (emphasis added).

Count IV of the Complaint further evidences the intent to merge the Defendant Subsidiaries into Owens Corning and treat them as a joint enterprise (or substantively consolidate them):

(1) "[i]n the event this Court grants the relief requested in Count III of this Complaint, i.e., corporate veil piercing, with the result that Owens Corning and its Sham Affiliates are **treated as one enterprise** in these Bankruptcy Cases, the claims of the Bank Defendants within the **merged enterprise** should be subordinated to those of the Bondholders and Trade Creditors" (Complaint, ¶ 237) (emphasis added);

(2) "in any treatment of [Owens Corning] and its Sham Affiliates as a **joint enterprise**, all of the Banks' claims against **that enterprise** be subordinated to those of the Bondholders and the Trade Creditors" (Complaint, ¶ 239) (emphasis added); and

(3) "Official Representatives respectfully request ... [t]hat this Court enter an order equitably subordinating the Bank Defendants' claims against any **merged Owens Corning enterprise** to those of the Bondholders; [t]hat this Court enter an order equitably subordinating the Bank Defendants' claims against any **merged Owens Corning enterprise** to those of the Trade Creditors" (Complaint, p. 60) (emphasis added).

Because they seek substantive consolidation of the Defendant Subsidiaries with Owens Corning, a claim that was fully litigated and denied in the Substantive Consolidation Ruling, Counts III and IV are precluded by the doctrines of res judicata and

collateral estoppel. Further, because these Counts are based on an alter ego theory, they are similarly barred under the doctrine of collateral estoppel, as the Third Circuit rejected the argument that the Defendant Subsidiaries and Owens Corning operated as a single economic entity.

## A. The Substantive Consolidation Claims are Barred by the Doctrine of Res Judicata

The doctrine of res judicata is "[a] fundamental precept of common-law adjudication" and its application "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." In re Continental Airlines, Inc., 145 B.R. 404, 409 (D.Del. 2002) (citing Montana v. United States, 440 U.S. 147, 153 (1979)). Succinctly stated, "the doctrine of res judicata serves the purpose of judicial finality." Donegal Steel Foundry Co. v. Accurate Products Co., 516 F.2d 583, 587 (3d Cir. 1975). As stated by the Supreme Court, the doctrine of res judicata "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate, protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147 at 153-54; see also Bell Atlantic-Pennsylvania, Inc. v. The Pennsylvania Utility Commission, 273 F.3d 337, 345 (3d Cir. 2001) (stating that claim preclusion allows parties "to rely on prior judicial decisions and not to be held liable on claims on which that party previously has prevailed").[16]

---

[16] The doctrine of res judicata arises out of concerns of fairness, and is based in part on the parties' expectation that they will not be subject to inconsistent decisions and inconsistent legal obligations. Id. (citing E.E.O.C. v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990)). Thus, the underlying theory of res judicata is that, "as between the parties

Generally, three elements must be present for the doctrine of res judicata to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." E.E.O.C. v. United States Steel Corp., 921 F.2d 489, at 493 (3d Cir. 1990). In other words, if there is a "final, valid judgment rendered on the merits, the doctrine of res judicata precludes relitigation of the same cause of action between the same parties or their privies." Donegal Steel Foundry Co. v. Accurate Products Co., 516 F.2d 583, 587 (3d Cir. 1975). This "final judgment" serves as a conclusive determination as to the claim or demand in controversy, and this determination extends to every matter which was offered and received to sustain or defeat the claim as well as any other admissible matter which might have been offered for that purpose. Id.; see also In re Burlington Motor Carriers, Inc., 199 U.S. Dist. LEXIS 20819 (D. Del. Dec. 30, 1999) ("whether the claim could have been raised in the prior proceeding" is based on "whether there is essential similarity in the underlying events in both cases"). Notably, "the doctrine of res judicata applies with equal force to final judgments rendered by the bankruptcy courts and thus precludes relitigation in another bankruptcy proceeding and in other proceedings before Federal and State Courts." In re Continental, 145 B.R. 404, 409; Corestates Bank v. N.A. v. Hulls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999); Stoll v. Gottlieb, 305 U.S. at 170-72; Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 376-77 (1940).

1.      **Prior Suit was Final Judgment on the Merits**

The substantive consolidation issue was fully and extensively litigated at a thirteen day evidentiary hearing before Judge Wolin, and Judge Fullam entered his

---

and their privies, an issue need and should be judicially determined only once." In re McMillan, 579 F.2d 289, 292-293 (3d Cir. 1978).

decision after reviewing transcripts of testimony and the "voluminous documentary record compiled in the course of the hearing" and reading post-trial briefing and hearing post-trial argument. In re Owens Corning, 419 F.3d at 204 (as amended by In re Owens Corning, 2005 U.S. App. LEXIS 18043, *4 (3d Cir. Aug. 15, 2005)), petition for cert. filed, (Jan. 26 2006) (No. 05-941). In the Substantive Consolidation Ruling, the Third Circuit clearly stated that the District Court's order was final[17] and was "thus a practical termination of the substantive consolidation litigation." Id. at 204. This final order was overturned by the Third Circuit, after appellate briefing and argument. Id. at 216.

### 2. Prior Suit Involved the Same Claim

Under the cloak of "equitable subordination" and "veil piercing," relying on the same underlying transactions and facts presented in the prior action on substantive consolidation, the Complaint seeks the same substantive consolidation of the Defendant Subsidiaries with Owens Corning which was denied by the Third Circuit. Res judicata bars subsequent litigation of claims arising from the "same transaction" or "common nucleus of operative fact[s]" as prior litigation. Maldonado v. Flynn, 417 A.2d 378, 381-83 (Del. Ch. 1980). Importantly, this Court must focus on the underlying transaction and not the substantive legal theories or types of relief the plaintiff seeks. Id. at 381.

Whether substantive consolidation of the Owens Corning entities is appropriate in these cases was at the heart of the Substantive Consolidation Ruling. The Third Circuit definitively ruled in this bankruptcy proceeding that "[s]ubstantive

---

[17]  Courts generally hold that a judgment is final for res judicata purposes notwithstanding the pendency of an appeal. See Maldonado v. Flynn, 417 A.2d 378, 384 (Del. Ch. 1980). Otherwise, "the incentive would be for the losing party in one suit to simultaneously appeal and file suit in another jurisdiction hoping for an inconsistent judgment." Playtex Family Prods., Inc. v. St. Paul Surplus Lines Ins. Co., 564 A.2d 681, 683 n.2 (Del. Super. Ct. 1989) (citation omitted).

consolidation fails to fit the facts of our case and, in any event, a 'deemed' consolidation cuts against the grain of all the principles." In re Owens Corning, 419 F.3d at 212. The issues ultimately decided in the Substantive Consolidation Ruling were initiated by the Debtors' Substantive Consolidation Motion filed on January 17, 2003. By the Debtors' Substantive Consolidation Motion, they sought to substantively consolidate with Owens Corning the Debtor subsidiaries, as well as the three non-debtor Defendant Subsidiaries. The Debtors' Memorandum in Support of the Substantive Consolidation Motion states, in relevant part,

> Chapter 11 petitions were filed on behalf of all but three of these [Guarantor] entities. If a consensual plan is not achieved, the Plan contemplates filing Chapter 11 petitions and consolidating the three remaining non-debtor subsidiary guarantors—IPM, OC Sweden, and Vytec (all entities with foreign businesses). Debtors will, therefore, provide evidence of the substantial identity and benefits of substantively consolidating these entities as well as the debtor guarantors.

See Consolidation Memorandum (Docket no. 6758), p. 8;  See also In re Owens Corning, 419 F.3d at 202 (recognizing request to consolidate Defendant Subsidiaries with Owens Corning). Thus, the Third Circuit considered the very same issues that are raised in the Complaint—whether it is proper to substantively consolidate IPM, OCFS, and Vytec with the Owens Corning estate. Stated differently, in both cases the courts are asked to decide whether sufficient circumstances exist to warrant bringing the assets of the Defendant Subsidiaries into the Owens Corning estate for distribution to the Owens Corning creditors. The Third Circuit's answer was a resounding "no."

    **3.**      **The Same Parties and Their Privies Participated in Prior Suit**

All of the parties to this adversary proceeding were parties to the prior substantive consolidation action. The "same parties" requirement of res judicata is

construed broadly to include all parties to the Chapter 11 Case. See CoreStates, 176 F.3d at 195 (distinguishing a bankruptcy case from a typical civil action and concluding that claim preclusion applies between all parties to a bankruptcy case); In re Genesis Health Ventures, Inc., 324 B.R. 510 (Bankr. D. Del. 2005) (the "same parties" element of res judicata is satisfied where the plaintiffs in the subsequent action were creditors and the defendants were the debtor's senior lenders).

As more fully discussed in the Motion filed contemporaneously herewith, the Plaintiffs were participants in the District Court's proceedings and they participated in the appeal and presented oral argument to the Third Circuit as appellees. See In re Owens, 419 F.3d at 204 (indicating that Andrew Rahl, Esquire argued as Counsel for (Appellee) Official Representatives of the Bondholders and Trade Creditors); Consolidation Memorandum, n. 13 (referring to the "Bondholders Holders" as "Participating Parties"). Owens Corning and the other Debtors represented the interests of the Defendant Subsidiaries in the prior action.

Since the tripartite test for res judicata is easily met, the substantive consolidation claims, disguised as veil piercing and equitable subordination, are barred.

**(B)      Substantive Consolidation and Veil Piercing Claims are Barred by the Doctrine of Collateral Estoppel**

The Plaintiffs are also barred from asserting a claim for substantive consolidation or veil piercing under the doctrine of collateral estoppel. The doctrine of collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior lawsuit. In re Norman Docteroff, 133 F.3d 210, 214 (3d Cir. 1997). This doctrine has been extended and applied in bankruptcy proceedings. In re Genesis Health Ventures, 324 B.R. at 527; Harper v. Valley Broadcasters, Inc., 743 F. Supp. 1076, 1082 (D. Del. 1990) ("The normal rules of issue preclusion apply to decisions of the bankruptcy

courts").[18] To estop a party from relitigating an issue, the Third Circuit Court has established a four-part test that must be satisfied:

    (1)    the issue sought to be precluded must be the same as the one involved in the prior action;

    (2)    the issue must have been actually litigated;

    (3)    the issue must have been determined by a valid and final judgment; and

    (4)    the determination must have been essential to the prior judgment.

In re Norman Docteroff, 133 F.3d 210, 214 (citing In re Ross, 602 F.2d 04, 608 (3d Cir. 1979)). Collateral estoppel, or issue preclusion, "prevents the relitigation of issues that have been decided in a previous action." Hawksbill Sea Turtle v. Federal Emergency Management Agency, 126 F.3d 461, 474 (3d Cir. 1997). The doctrine of issue preclusion, among other things, serves to reduce the "costs of multiple lawsuits, facilitates judicial consistency, conserves judicial resources, and encourages reliance on adjudication." Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 547 (3d Cir. 1996) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). The four elements required for preclusion of the substantive consolidation issue are easily met here.

---

[18]  Initially, the court must determine whether to apply Delaware or federal principles of collateral estoppel. Harper v. Valley Broadcasters, Inc., 743 F. Supp. 1076, 1082. Where the prior judgment was rendered by a federal court, federal principles of collateral estoppel apply. In re Norman Docteroff, 133 F.3d 210, 214 (citing Heiser v. Woodruff, 327 U.S. 726, 732, 90 L. Ed. 970, 66 S. Ct. 853 (1945). In this case, notably, the test for determining collateral estoppel under Delaware law is substantially the same as the federal standard, which requires: (1) a question of fact essential to a judgment, (2) be litigated and (3) determined (4) by a valid and final judgment.

1. **The Complaint Seeks to Litigate the Same Issues Decided in the Substantive Consolidation Ruling**

Count III of the Complaint alleges that the corporate veils of the Defendant Subsidiaries should be pierced based on the theory that they are "alter egos" of Owens Corning. (Complaint, ¶¶ 230, 235 and p. 59). Under Delaware law, in order for the Plaintiffs to succeed on a veil piercing claim based on an "alter ego" theory, they must prove (1) that the parent and subsidiaries "operated as a single economic entity" and (2) injustice or unfairness if the veil is not pierced. In re Foxmeyer Corp., 290 B.R. 229, 235 (Bankr. D. Del. 2003).[19] Without question, the first issue was decided against the Bondholders and Trade Creditors in the Substantive Consolidation Ruling.

The Third Circuit determined that (1) there was no prepetition disregard of corporate separateness and that (2) there was no postpetition hopeless commingling of assets. In re Owens Corning, 419 F.3d at 212-15. In reaching a determination as to whether separate legal entities should be regarded as alter egos, courts consider whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder. Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076, 1085 (D. Del. 1990). The Third Circuit listed specific examples of facts to support its conclusion of the separateness of

---

[19] See also Old Colony Ventures I, Inc., 1996 U.S. Dist. LEXIS 18305, *15 (D. Kans. Oct. 2, 1996) (citing among others Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 989 (Del. Ch. 1987); Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076, 1085-86 (D. Del. 1990), aff'd, 932 F.2d 959 (3d Cir. 1991)).

the entities, including the following facts relating to IPM, which directly follow the corporate separateness test for alter ego claims:

(a) Adequate capitalization: "[IPM did not receive] administrative support from [Owens Corning] and ... paid payroll and business expenses from [its] own accounts." Id. at n.3.

(b) Kept Corporate Records: "IPM prepared its own accounting and financial records and paid its own expenses from its separate bank accounts." Id.

(c) Officers and Directors Functioned Properly: "IPM's officers oversaw all investment activity and maintained records of investment activity in IPM subsidiaries." Id.

(d) Other Corporate Formalities: "IPM ... entered into agreements with parties unaffiliated with the [Owens Corning] Group and operated as an autonomous entity," "IPM operated outside of [Owens Corning's] business units," and "IPM had [its] own company logo[] and trade name[]." Id.

The Third Circuit found that "[e]ach subsidiary was a separate legal entity that observed governance formalities. Each had a specific reason to exist separately, each maintained its own business records, and intercompany transactions were regularly documented." In re Owens Corning, 419 F.3d at 201.

"A bankruptcy court's power to substantively consolidate cases has been likened to the ability to pierce the corporate veil of separate corporations. But both are used sparingly." In re Emerick Farms, Inc., 201 B.R. 790, 802 (Bankr. N.D. Ill. 1996) (citations omitted). In Emerick, the court barred a claim for veil piercing under the doctrine of law of the case, when the movants relied on the same evidence the court previously considered in denying a claim for substantive consolidation. Id. The court stated that by seeking to pierce the veils of entities which the court would not substantively consolidate, "[i]n effect, the parties are seeking a 'partial' substantive consolidation. To treat the Debtors as one for purposes of this adversary proceeding, but

not for the main case, would be unfair. They either are the same, and should be treated the same for all purposes, or they are not and they should not be treated the same for any purpose." Id. Similarly, the Plaintiffs' attempt to pierce the corporate veils of the Defendant Subsidiaries is essentially an attempt to partially relitigate the same issues decided in the Substantive Consolidation Ruling.

Sitting by designation in the Bankruptcy Court for the District of Delaware, Judge Wizmur recognized that the analysis used in the finding of a "substantial identity between the entities to be consolidated" in the context of a substantive consolidation ruling "mirrors that used by courts to determine whether corporations are alter egos of one another." In re Genesis Health Ventures, Inc., 266 B.R. 591, 618 (Bankr. D. Del. 2001); see also In re New Center Hospital, 187 B.R. 560, 568 (E.D. Mich. 1995) (making clear that a "determination of whether the corporations in question are alter egos of one another is critical to both [the Augie/Restivo (which was applied in the Substantive Consolidation Ruling) and Auto-Train] analyses" applied in substantive consolidation cases). In this case, the Third Circuit explicitly held that "the District Court's conclusions of 'substantial identity' of [Owens Corning] and its subsidiaries .. are incorrect." In re Owens Corning, 419 F.3d at 213.

2.    **The Substantive Consolidation Issue was Actually Litigated**

As stated above, whether substantive consolidation is appropriate in these cases, including the issue of separateness of identities of the Owens Corning entities, was fully and extensively litigated at a thirteen day evidentiary hearing. Judge Fullam entered his decision after reviewing the "voluminous documentary record" and post-trial briefing and hearing post-trial argument. In re Owens Corning, 419 F.3d at 204 (as amended by In re Owens Corning, 2005 U.S. App. LEXIS 18043, *4 (3d Cir. Aug. 15,

2005)).  The Plaintiffs participated in the District Court's proceedings and the Third

Circuit appeal, as they presented oral argument to the Third Circuit as appellees.  See Id.

(indicating that Andrew Rahl, Esquire argued as Counsel for (Appellee) Official

Representatives of the Bondholders and Trade Creditors); Consolidation Memorandum,

n. 13 (referring to the "Bondholders Holders" as "Participating Parties").

### 3.     The Substantive Consolidation Issue was Determined by a Final Judgment.

The Third Circuit clearly stated that the District Court's order was final

and was "thus a practical termination of the substantive consolidation litigation."  In re

Owens Corning, 419 F.3d at 204.  This final order was overturned by the Third Circuit,

after appellate briefing and argument.  Id. at 216.

### 4.     The Determination was Essential to Prior Judgment

As detailed above, the same factual findings necessary to prove the "lack

of corporate separateness" element of substantive consolidation are also necessary to

prove the "single economic entity" element of a veil piercing claim based on an alter ego

theory.  Not only was it essential for the Third Circuit to decide that the entities did not

operate as a single economic entity, it explicitly found that the entities maintained

corporate separateness, id. at 212-14, that "the District Court's conclusions of 'substantial

identity' of [Owens Corning] and its subsidiaries" was incorrect, id. at 213, and that the

movants could not "fulfill their burden of demonstrating that the Debtors' affairs are even

tangled," id. at 215.  Therefore, the determination that the Defendant Subsidiaries were

not alter egos of Owens Corning was material to, and actually decided as part of, the

Substantive Consolidation Ruling.

The Third Circuit also explicitly found that the Owens Corning

subsidiaries should not be pulled into the Owens Corning estate.  The Third Circuit stated

> "Communizing" assets of affiliated companies to one survivor to feed all creditors of all companies may to some be equal (and hence equitable). But it is hardly so for those creditors who have lawfully bargained prepetition for unequal treatment by obtaining guarantees of separate entities. ... No principled, or even plausible, reason exists to undo [Owens Corning's] and the Banks' arms-length negotiation and lending arrangement, especially when to do so punishes the very parties that conferred the prepetition benefit—a $2 billion loan unsecured by [Owens Corning] and guaranteed by others only in part. To overturn this bargain, ... would cause chaos in the marketplace, as it would make this case the Banquo's ghost of bankruptcy.

Id. at 216. The Third Circuit's clear rejection of substantive consolidation bars any subsequent claims for substantive consolidation, regardless of whether they are disguised as veil piercing or equitable subordination.

## IV. TO THE EXTENT THAT ANY CLAIMS SURVIVE THE DEFENDANTS' MOTIONS TO DISMISS, ADJUDICATION OF THE SURVIVING CLAIMS SHOULD BE CONSOLIDATED WITH THE CONFIRMATION HEARING

Section 105(a) of the Bankruptcy Code grants this Court broad discretion to issue "any order, process, or judgment that is necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The broad equitable power of section 105(a) includes the ability to stay other proceedings as necessary to facilitate the administration of the bankruptcy case. "A bankruptcy judge has broad equitable powers which exceed the limits of the automatic stay and permit him to enjoin the commencement or prosecution of collateral proceedings." In re Eagle Enterprises, Inc., 265 B.R. 671, 681 (E.D. Pa. 2001). See also In re Bankruptcy Appeal of Allegheny Health, Education, and Research Foundation ("AHERF"), 252 B.R. 332, 337 (W.D. Pa. 1999) (Bankruptcy Court has authority under section 105(a) to enjoin proceedings beyond those stayed by section 362(a)).

This Court thus has the authority to enter a complete stay of this adversary proceeding. In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey, 1990 WL 123840, *3 (S.D.N.Y. 1990). This Court may also consolidate this adversary into the Confirmation Hearing. See In re Venture Holdings Co., LLC, 2005 Bankr. LEXIS 76, *9 (E.D. Mich. Jan. 26, 2005). This Court also can choose to reserve issues raised in this adversary proceeding for the Confirmation Hearing, in effect staying the adversary proceeding in the interim. See, e.g., In re Northgate Terrace Apts., Ltd., 126 B.R. 520, 525 (Bankr. S.D. Ohio 1991) (legal issues related to allegation that plan was uncomfirmable were more appropriately decided at confirmation hearing); In re Hoffinger Indus., Inc., 307 B.R. 112, 121 (Bankr. E.D. Ark. 2004) (issue of whether petition date was proper operative date for injury claims was reserved for confirmation hearing); In re Woodscape Ltd. Partnership, 134 B.R. 165, 178 (Bankr. D. Md. 1991) (recognizing that issues concerning feasibility of payments and proper classification of claims may be deferred for determination at confirmation hearing); In re New Valley Corp., 168 B.R. 73, 77 (Bankr. D.N.J. 1994) (post-petition interest could be determined at confirmation); In re Williams Communications Group, Inc., 281 B.R. 216, 221 (Bankr. S.D.N.Y. 2002) (issue of valuation is proper for confirmation).

A bankruptcy court's broad discretion also allows a stay of issues for confirmation even if they are properly raised in the adversary proceeding. Thus, an issue such as subordination, which is explicitly contemplated as an adversary proceeding within Bankruptcy Rule 7001(8), can instead be addressed at the Confirmation Hearing. In re Best Products Co., Inc., 168 B.R. 35, 65 (S.D.N.Y. 1994) (court refused to address subordination issue in adversary proceeding, instead dealing with the issue as raised in confirmation objections). In Best Products, the Judge stated, "objectants' procedural

argument that I may deal with contractual subordination only in the context of an adversary proceeding is simply wrong. It is expressly contemplated that such issues may arise in the course of confirmation." Id. A similar approach was taken by the bankruptcy court in In re Walnut Equip. Leasing Co., Inc., 1999 WL 1068448, *1 (Bankr. E.D. Pa. 1999). There, an adversary proceeding was suspended pending confirmation of a plan, and the court refused to delay confirmation to first adjudicate the suspended proceeding. Id. The court explained, "believing the Estate's claims could and should be dealt with as an objection to confirmation... I suspended the adversary to await ruling at confirmation. I intended to so rule now and the issue will be adjudicated." Id. at n. 7.

In the instant case, all of the issues raised in the Complaint will be addressed during the Confirmation Hearing. The following list exemplifies the numerous issues raised in the Complaint that will be addressed at the Confirmation Hearing:

- Count I seeks to equitably subordinate the Defendant Banks' claims against the Guarantors to the claims of Owens Corning. In the Fifth Amended Plan, the treatment given to the Defendant Banks' claims is analogous to the treatment the Defendant Banks' claims would receive if subordinated,[20] so the requested subordination of the Defendant Banks' claims against the Guarantors to the claims of Owens Corning would be effectively mooted by the confirmation of the Fifth Amended Plan. For example, under the Fifth Amended Plan, the Banks' recoveries against each of the various Guarantors is limited to such Guarantor's residual value after all third party and intercompany claims against such Guarantor have been paid in full (without post-petition interest).

- Count I also seeks to equitably subordinate the Defendant Banks' claims against Owens Corning to the claims of the Bondholders and Trade Creditors. The Fifth Amended Plan specifically provides for the allowance and payment of the Defendant Banks' claims. The relief sought in Count I, subordination of the

---

[20]  See Fifth Amended Plan §§ 3.6(b) (claims against Vytec), 3.9(b) (claims against OCFS), and 3.10(b) (claims against IPM).

Defendant Banks' claims, directly contradicts the Fifth Amended Plan's allowance and treatment of the claims.

- Count II seeks to equitably subordinate the claims of the Defendant Subsidiaries against Owens Corning to those of the Bondholders and Trade Creditors. As stated above, the intercompany claims, including the claims of the Defendant Subsidiaries, are listed in the Debtors' schedules and will be allowed or not allowed as part of the Confirmation Hearing. In fact, the Fifth Amended Plan requires that the allowance of intercompany claims and any objections thereto be resolved as a condition of confirmation. The Fifth Amended Plan states that "[t]he Court shall have allowed all material Intercompany Claims … or otherwise adjudicated any objections to the allowance of such Claims" as a condition of confirmation. See Plan, § 12.1 (g).

- Count III of the Complaint seeks the reverse piercing of the corporate veil of the Defendant Subsidiaries, so that the assets of those subsidiaries are available for distribution to the creditors of Owens Corning. This is a plain request to reorder the priorities as established in the Fifth Amended Plan (and under the Bankruptcy Code), effectively allowing Owens Corning's creditors direct access to the Defendant Subsidiaries' assets, rather than limiting them to any equity value Owens Corning would retain in such Debtor subsidiaries after all of the Debtors' subsidiaries' creditors have been paid pursuant to the Fifth Amended Plan. Not only does the result of the relief sought in Count III contradict the non-consolidation structure of the Fifth Amended Plan, for reasons more fully articulated above, it is inconsistent with the Substantive Consolidation Ruling. This is clearly a confirmation issue.

- Count IV of the Complaint, seeking equitable subordination of the Defendant Banks' claims against the Defendant Subsidiaries to the claims of the Plaintiffs is derivative of Count III and is similarly a request for the reordering of priorities established in the Fifth Amended Plan.

For these reasons, to the extent that any of the claims in the Complaint survive the motions to dismiss of the Defendant Subsidiaries and the Defendant Banks, the Court should stay these matters for adjudication at the Confirmation Hearing. Such a stay is particularly appropriate here where reserving issues for the Confirmation Hearing will conserve judicial resources and prevent unnecessary interference with the Debtors'

reorganization process. Without question, the same matters raised in the Complaint will be addressed at the Confirmation Hearing, and consolidating the adversary proceeding with the Confirmation Hearing will prevent duplicative or premature litigation of the same issues.

## CONCLUSION

For the reasons stated above, Defendants IPM, OCFS, and Vytec respectfully request that this Court grant its motion in its entirety and dismiss the allegations against IPM, OCFS, and Vytec contained in Counts II and III of the Complaint. In addition, this Court should dismiss Count I based on the Bondholders and Trade Creditors' lack of standing to seek the relief requested therein. Finally, this Court should dismiss Count IV on the grounds of res judicata and collateral estoppel.

Dated: March 28, 2006

**SIDLEY AUSTIN LLP**
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Attorneys for Owens Corning, et al.

**SAUL EWING LLP**

By: /s/ Norman L. Pernick
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Charles O. Monk, II
Henry R. Abrams
Robin D. Leone
Lockwood Place
500 E. Pratt Street
Baltimore, MD 21202
(410) 332-8600

Attorneys for Owens Corning, et al.